Sullivan, }
June, 1898. }

## ELLIS v. BLUE MOUNTAIN FOREST ASSOCIATION.

A way of necessity is founded on an implied grant, and cannot exist unless there has been a former unity of ownership of the two estates.

If the proprietors of a game preserve enclose within its limits land of another upon which they suffer their wild and dangerous animals to run at large, the wrong is one for which an action at law does not furnish an adequate remedy, and which may be restrained by injunction.

WRIT OF ENTRY, to recover a tract of land in Croydon, with a second count of a BILL IN EQUITY, for additional relief in relation thereto. Facts found by the court.

The plaintiff in his count in equity alleges that he has title to, and ought to be in peaceable possession of, the premises described in his first count, which are enclosed and surrounded on all sides by lands of the defendants and occupied by them, the lands so occupied being known as Corbin park; and that the

park is enclosed by a fence about ten feet high erected and maintained by the defendants. The park thus enclosed includes the plaintiff's premises, and is stocked and occupied by the defendants with a great variety of wild and dangerous animals. He also alleges that when the defendants acquired title to their lands, there were, and for a long time had been, certain highways leading therefrom, by means of which the plaintiff had access to his premises; but the defendants, contriving and intending to injure the plaintiff and destroy the value of his premises, not only erected the fence as aforesaid, but by means of representations, persuasions, inducements, and arguments, procured the discontinuance of these highways, and in this way have deprived the plaintiff of access to his premises, unless he shall obtain the same by force, or trespass, or by incurring great damage to his person and property from the necessary exposure to the dangerous animals. Wherefore he prays that the defendants be ordered to furnish him with a safe, suitable, convenient, and unobstructed way to his premises over their land, and for such other relief as is just.

The defendants filed a plea of disclaimer as to the first count. As to the count in equity, they said it alleged nothing entitling the plaintiff to equitable relief, and if the allegations entitled the plaintiff to any relief, the courts of law furnished an adequate remedy. The defendants further admit the validity of the plaintiff's title, and that his lands are included in the park surrounded by a fence, as he alleges, and occupied by a great variety of their wild animals, which they deny are dangerous.

The association, in compliance with the legislative act of 1895 for the better protection of Corbin park, caused the following to be published in a newspaper printed in Sullivan county:

## "NOTICE.

"In pursuance of an act passed by the legislature of the state of New Hampshire, and approved by the governor, on March 28, 1895, entitled 'An act for the better protection of Corbin park,' notice is hereby given to all persons that the Blue Mountain Forest Association, a corporation organized and existing under the laws of the state of New Hampshire, has purchased, laid out, devoted, and dedicated, for the purpose of maintaining a private park for propagating and protecting fish, birds, and game, all those certain lands, together with the ponds and other waters within their boundaries, situated in the county of Sullivan, as hereinafter described. . . . Said territory is surrounded by a high continuous fence and contains about twenty-five thousand acres, more or less, including within its limits parts of the towns of Newport, Croydon, Cornish, Plainfield, and Grantham, and the mountains known as Croydon and Grantham mountains, being commonly known as the Corbin park."

The entrance to the park is through gates, secured by locks and under the charge of keepers, upon a pass issued by the superintendent or other proper person.

The premises owned by the plaintiff formerly constituted a farm, but the buildings are now gone. About one half is wood and timber land, and the remainder pasture. There is no access to it except through the park. Some of the animals therein are at times dangerous. The plaintiff has been furnished a pass by the defendants, and they are willing to open their fence at any point he may desire, and permit him to cross their land for the purpose of getting off his wood and timber, or for any other purpose in connection with his property, provided he will pay the expense of a gate-keeper and recompense them for any actual damage they may suffer from such opening and crossing. Prior to and at the time of the commencement of the plaintiff's action, his aforesaid premises had been and were occupied more or less by the defendants' wild animals, and the defendants have done nothing to exclude them therefrom.

*Ira Colby*, for the plaintiff.

*Hosea W. Parker* and *Albert S. Wait*, for the defendants.

WALLACE, J. One question presented is whether the plaintiff is entitled to relief under his bill in equity. He asks that the defendants be required to furnish him with a safe, suitable, convenient, and unobstructed way across their land to his. He claims that he once had access to his lands through certain highways which the defendants have induced the authorities to discontinue, and for that reason and because his land is wholly surrounded by the defendants', he is entitled to a way of necessity. The discontinuance of the highway by the proper authorities, even if induced or moved by the defendants, would give the plaintiff no right of way through the defendants' land, nor afford him any ground of relief in this proceeding. The correctness of the discontinuance proceedings cannot be attacked or inquired into collaterally in this way. *State* v. *Kennedy*, 65 N. H. 247. The plaintiff at the time of the discontinuance could have been heard against that action, and could also have presented his claim for damages under our statute. P. S., c. 72.

The fact that the plaintiff's land is completely surrounded by the defendants' does not of itself give the plaintiff a way by necessity over their land. A way by necessity is founded on an implied grant. When a person grants land to which there is no right of way except over his own land, or retains land which is inaccessible except over the land which he conveys, a right of way is presumed to have been granted or reserved. But with-

out a unity of ownership there will be no way of necessity. If there can ever be a parcel of land with no right of way to it, a conveyance of it will convey no right to pass over the adjoining land of a stranger, however necessary it may be to the enjoyment of the land conveyed. The grantee could in that case have no greater right than his grantor possessed. *Proctor* v. *Hodgson*, 10 Exch. 822; *Kimball* v. *Railroad*, 27 N. H. 448; *Pingree* v. *McDuffie*, 56 N. H. 306; *Nichols* v. *Luce*, 24 Pick. 102; *Woodworth* v. *Raymond*, 51 Conn. 70; *Tracy* v. *Atherton*, 35 Vt. 52; *Oliver* v. *Hook*, 47 Md. 301. The facts disclosed do not show any circumstances which give the plaintiff a right of way by necessity across the defendants' land. There is no unity of possession from which a grant of a way by necessity can be presumed. It does not appear that the plaintiff ever had any right of way through any of the different pieces of land included in the park before the defendants owned them; and the fact that they have purchased all the lands surrounding his tract gives him no right in their land which he did not have in the several parcels before they acquired them. The plaintiff having no right of way over the defendants' land, a court of equity cannot decree him one. Our statutes authorizing the laying out of highways for the accommodation of individuals (P. S., c. 67, s. 16) provide a method by which the plaintiff can secure a way to his land.

The plaintiff also asks that the defendants be compelled to keep their animals upon their own land, and be restrained by injunction from permitting them to go upon his land. Although equity will not interfere in the case of a trespass which is temporary in its nature and effect, and for which the legal remedy of an action at law is adequate, yet if the trespass is a continuous one or if repeated acts of wrong are done or threatened, although each act by itself may not be destructive or cause irreparable injury, and for which if it stood alone an action at law might be an adequate remedy, the entire wrong may be prevented or stopped by injunction, on the ground of preventing a multiplicity of suits and the inadequateness of the legal remedy. 3 Pom. Eq. Jur., s. 1357; 2 Beach Eq. Jur., s. 721; 2 Sto. Eq. Jur., s. 925; *Coe* v. *Company*, 37 N. H. 254, 261; *Burnham* v. *Kempton*, 44 N. H. 78, 95; *Wheelock* v. *Noonan*, 108 N. Y. 179. The plaintiff's premises being wholly surrounded by the defendants' land, they have enclosed the whole tract with a fence ten feet high and have published a notice stating that they have " purchased, laid out, devoted, and dedicated, for the purpose of maintaining a private park for the propagating and protecting of fish, birds, and game," this very tract of land, describing it by metes and bounds. They have placed in the park a great variety of wild animals, some of which at times are dangerous, and suffered

them to roam at will over the whole enclosure, including the plaintiff's land, which has been more or less occupied in this manner. The defendants have in this way had the actual possession of the plaintiff's land, and the possession is of such a character that he cannot safely avail himself of the offer of the defendants to let him at any time pass through their gates and go upon his land and recover the possession. If by taking a sufficient force with him he should go there and regain the possession, he could not hold it except by a continual retention of a force there to drive off these wild beasts as they should again come upon his land. The act of the defendants in thus appropriating the use of the plaintiff's land to the purposes of their game preserve, is a trespass. From the nature of things, this trespass will be continuous so long as the defendants use their park as they do now, and the facts indicate they intend to continue the use permanently. Repeated actions of law would furnish no adequate remedy to the plaintiff. In an action of trespass, only damages to its date could be recovered, and for the subsequent continuance of the trespass repeated actions would have to be maintained. The defendants might pay the damages, and, if there is no other adequate remedy, continue the occupation permanently in spite of their wrong, making of themselves, in effect, tenants who could not be dispossessed. The wrong is the continued unlawful occupation, and any remedy that does not end it is inadequate to redress the injury or restore the injured party to his rights. To refuse the injunction asked for would allow a wrongdoer to compel an innocent person to perpetually lease his property for such damages as he might be able to recover in repeated actions of trespass, and deprive him of the right to enjoy his estate himself. It is unnecessary for the plaintiff to establish his right at law, as the defendants admit they have no right in his land. *Burnham* v. *Kempton, supra.* An injunction will issue restraining the defendants from suffering or permitting their animals to go upon the plaintiff's land.

In this view it is unnecessary to determine whether the plaintiff can maintain his writ of entry, or should have brought trespass. Equity having taken jurisdiction of the matter will settle it. The plaintiff can have any damages he is entitled to assessed at the trial term, and a writ of possession can be issued then if found necessary. *Fowler* v. *Beckman,* 66 N. H. 424. The matter of costs can also be adjusted at that time.

*Case discharged.*

BLODGETT, J., did not sit: the others concurred.