### NEBLETT v. R. S. STERLING INV. CO.
(No. 684.)

(Court of Civil Appeals of Texas. Beaumont. June 22, 1921. Rehearing Denied June 29, 1921.)

1. **Easements ⟨⟩61(8) — Petition held not to support an easement by implication or necessity.**

   Petition alleging plaintiff's lot abuts on a street and alley and seeking injunction against obstruction of ingress and egress does not support an easement by implication or necessity.

2. **Easements ⟨⟩18(4) — Way of necessity arises only between grantor and grantee.**

   A way of necessity arises only between grantor and grantee; necessity· alone, without such relation, as where one buys a lot supposing it abutted on a street, whereas between it and the street was a strip owned by a stranger to the title to the lot, is not enough.

3. **Nuisance ⟨⟩3(12) — Fence not a nuisance per se.**

   One who uses his property in a lawful and proper maner is not guilty of a nuisance merely because the use may cause inconvenience or annoyance to his neighbor, and so a fence between a lot and a street on a narrow strip between them owned by another than the lot owner is not a nuisance per se.

4. **Dedication ⟨⟩19(1)—Streets not dedicated where so-called addition is not near city.**

   An attempted dedication of streets by a plat of a so-called addition to a city is ineffectual, the land not being contiguous or adjoining to the

---

city, as is necessary for an "addition," nor any part of a municipality, nor the beginning of a new town, especially in the absence of any acceptance.

5. **Adverse possession** ☞8(2)—**Prior to statute title to street could be acquired against city.**

Prior to taking effect July 4, 1887, of the statute (Acts 20th Leg. c. 40), now Vernon's Sayles' Ann. Civ. St. 1914, art. 5683, title to a street could be acquired against a city by adverse possession.

Error from District Court, Harris County; J. D. Harvey, Judge.

Action by W. P. Neblett against the R. S. Sterling Investment Company. Judgment for defendant, and plaintiff brings error. Affirmed.

W. P. Neblett, of Houston, for plaintiff in error.

Ross & Wood, of Houston, for defendant in error.

O'QUINN, J. In this opinion we shall refer to plaintiff in error as plaintiff, and defendant in error as defendant.

Plaintiff brought this suit against defendant for a mandatory injunction to require defendant to remove a certain fence and hedge, which plaintiff alleged obstructed his right of ingress and egress to and from his property, which was alleged to front and abut 92.25 feet on Mt. Vernon street on the east and 150 feet on an alley on the north in the Rossmoyne addition to the city of Houston.

Defendant answered by general demurrer, general denial, pleas of two, three, four, five and ten year statutes of limitation, and other special pleas.

The case was tried before the court without a jury, who rendered judgment for defendant, from which plaintiff has appealed by writ of error.

The court in his decree of judgment found the following facts:

"This being a suit brought by plaintiff, claiming to be the owner of a tract of 95.25x150 feet situated southwest of the Rossmoyne addition to the city of Houston, and described by him in his petition as lots numbered 2 and 3 and the adjoining 5x100 feet of lot No. 4, all of lot No. 11 and 30x50 feet in lot No. 12 in block No. 42 of the N. P. Turner addition to the city of Houston, in Harris county, Tex., plaintiff further alleging said premises to be a part of lot No. 10 of the Obedience Smith survey, and that the same fronted 95.25 feet on the west side of Mt. Vernon street and extended westwards between parallel lines a distance of 150 feet for depth, plaintiff further claiming that the said premises not only fronted upon Mt. Vernon street, but also upon the south side of the alley which runs westwardly from said Mt. Vernon street along the south side of block No. 5 of Rossmoyne addition to the city of Houston, and that a right and easement existed in favor of said premises claimed by him and as appurtenant thereto of ingress and egress to and from said premises claimed by him over said Mt. Vernon street and said alley, and that the said premises claimed by him had all of the rights, easements, and privileges resulting from same abutting on said street and alley. Plaintiff further alleged that defendant was wrongfully and unlawfully maintaining a hedge and fence along the east side of said premises claimed by plaintiff and between said premises and the west line of Mt. Vernon street and along the north line of said premises claimed by plaintiff and between which said premises and the south line of said alley, and that said fence and hedge constituted a nuisance, and the court, having heard the pleadings, evidence, and arguments of counsel, finds that the said fence and hedge complained of by said plaintiff are constructed in a lawful and proper manner, and that the same are situated wholly upon the premises of said defendant, and that the same are not and do not constitute a nuisance, and that the defendant is entitled to maintain the same, and the court further finds that the said premises claimed by said plaintiff do not front on Mt. Vernon street or upon said alley or any part of said street or said alley, and that plaintiff has no premises fronting or abutting either upon said street or upon said alley, or any part thereof, and further that, regardless of whether the said premises claimed by said plaintiff are correctly described by him in his said petition or not, the same premises so claimed by plaintiff as same actually lie on the ground are bounded on the east by an old fence line and on the north by an old fence line, a few of the old posts in said fence line still remaining to evidence the location thereof, and which old fence line has existed for more than 40 years, and the court further finds that between the west line of Mt. Vernon street and the east line of said premises claimed by plaintiff there is a strip of land one foot wide or more at all points owned by defendant running along the west line of Mt. Vernon street the full distance or length of the east line of the premises claimed by plaintiff, and that likewise there is a strip of land one foot wide or more at all points owned by defendant running along the south line of said alley and between the said south line of said alley and the north line of said premises claimed by said plaintiff for the full distance and length of the north line of the premises claimed by plaintiff, so that the premises claimed by plaintiff at no point approached nearer than one foot to the said west line of said Mt. Vernon street on the south line of said alley, and the court finds and decrees that the said premises claimed by said plaintiff do not abut upon either said Mt. Vernon street or said alley or upon any part of said street or alley, and that no right, privilege, or easement exists in favor of said premises claimed by plaintiff or any part of same in or to the said Mt. Vernon street or said alley, and that no right, privilege, or easement exists in favor of said plaintiff or of said premises claimed by him in or to said Mt. Vernon street or said alley or any other streets or alleys of said

Rossmoyne addition, and the court further finds that plaintiff is not entitled to any of the relief prayed for by him, and therefore denies plaintiff's application for an injunction, and renders judgment against him."

On motion of plaintiff, the court filed his findings of fact and conclusions of law, which are as follows:

"Some time during or prior to A. D. 1876 the owners of a tract of —— acres of land, known as lot No. 10 of the Obedience Smith survey in Harris county, Tex., platted same into lots, blocks, and streets, giving it the name of the Turner addition, as shown by the map of the Turner addition appearing in the map of the city of Houston, introduced in evidence, designated as the 'Macatee map.' At the time of so platting such land the streets shown on such map were dedicated by the owners of said lot No. 10 as public streets, but said Turner addition, as then dedicated, was not within the territorial limits of any municipal corporation, and did not become so until the year A. D. 1913, when it became embraced within the corporate limits of the city of Houston.

"During the year 1877, and prior to May 1st of that year, one Wiley Smith acquired by various purchases and thereby became the owner of a part of said lot No. 10 embracing approximately 43¾ acres thereof, all of which now forms the greater part of the Rossmoyne addition. The line found and set out in the judgment of court here rendered as being a part of the true boundary of the Rossmoyne addition is identical with part of the boundary line of said lands acquired by Wiley Smith, as above stated. At some time prior to June 1, 1877, said Wiley Smith went into actual possession of all of said land in lot 10 so acquired by him, having before that date erected a fence entirely around all said land, and placed dwelling houses, outhouses, etc., thereon, and he and those holding under him continued thereafter to hold peaceable and adverse possession of all such land (including all streets and parts of streets lying thereon), using, occupying, cultivating, and enjoying the same without interruption and under claims of right for more than 30 years. The fence so erected by Wiley Smith and maintained by him and those holding under him for 30 years or more, as above stated, inclosed the parts of all streets and alleys of the Turner addition which lay upon said 43¾ acres of land acquired by Wiley Smith as aforesaid, and part of said fence ran along the line now marked by old fence posts and trees as specified in the judgment herein rendered, same being part of the boundary of said 43¾ acres. Before the fencing of such land by Wiley Smith, as above set out, all persons holding, or owning title to or interest in property situated in said Turner addition (including those under and through whom plaintiff holds title), granted to Wiley Smith or to his immediate grantors all the rights and easements in and to all those parts of streets and alleys of said Turner addition which lay within the boundaries of said 43¾ acres so acquired and fenced by Wiley Smith, as above stated, and agreed to the extinguishment of all their said rights and easements. All the parts of streets and alleys of said Turner addition which lay within the boundaries of the 43¾ acres acquired and fenced by Wiley Smith, as above stated, ceased to be such at that time, and all easements thereon as such were then extinguished.

"The defendant's fence, of which plaintiff complains herein, stands wholly upon said 43¾ acres of land acquired and fenced by Wiley Smith, as above set out, and wholly upon land now owned by defendant.

"Conclusions of Law.

"The defendant's fences and hedge complained of by plaintiff, being situated wholly upon defendant's land, in or upon which plaintiff holds no right or easement, the said defendant rightfully maintains such fences and hedges, and plaintiff is not entitled to interfere therewith, and is not entitled to the relief sought here."

Plaintiff's first assignment of error is:

"The court erred in denying the plaintiff in error the relief sought, when the undisputed evidence showed that plaintiff had no other way of ingress and egress to and from his property except over the one foot reserved by plaintiff in error."

Under this assignment, he submits two propositions, to wit:

(1) "Ingress and egress to property is an absolute necessity, and if one is deprived thereof he is deprived of his property."

(2) "Where the antecedent grantor conveyed a portion of his land, the law will not presume that he intended to deprive himself of the enjoyment of the remainder."

[1, 2] This assignment presents the question that plaintiff has a right of way by necessity over the premises of defendant. In plaintiff's pleading, he asserts that his property fronts and abuts on Pine street in the N. P. Turner addition, and that Mt. Vernon street in the Rossmoyne addition took the place of Pine street, and that his property fronts and abuts on Mt. Vernon street on the east, and on the alley to the north, and that he has an express easement on and over same, which defendant has obstructed. This pleading does not support an easement by implication or necessity, but, if this were not true, the assignment must be overruled, for a way of necessity arises only between grantor and grantee, and cannot exist when there was never any unity of ownership. 14 Cyc. 1172. In the instant case defendant was not plaintiff's grantor. There is no privity of title between them. It is well settled that a way of necessity arises where one has sold land to another, not having any outlet save over the land of the grantor, in which the grantor, by implication, grants a right of way, but defendant here was not plaintiff's grantor. Williams v. Kuykendall, 151 S. W. 629; Alley v. Carleton, 29 Tex. 74, 94 Am. Dec. 260. The rule is equally well settled that necessity alone, without reference to any relations between the respective owners of land, is

not sufficient to create this right. The fact that one's land is completely surrounded by the land of another does not, of itself, give the former a way of necessity over the land of the latter, where there is no privity of ownership. Ellis v. Blue Mountain Forest Ass'n, 69 N. H. 385, 41 Atl. 856, 42 L. R. A. 570. But plaintiff contends that, having purchased his property as fronting and abutting Mt. Vernon street, he is entitled to ingress and egress over said street, and to deny him this right is to deprive him of his property. The court found, and the admitted facts show, that plaintiff's property does not front or abut on said street, but that there is a strip of land a foot or more in width between plaintiff's land and the street and alley, and, while plaintiff's deed calls fronting 92.25 feet on Mt. Vernon street on the east, still, as a matter of fact, it does not do so, and, besides, defendant did not sell plaintiff the property; neither is said property of plaintiff any part of said Rossmoyne addition, but is entirely without same, and does not touch said street or alley at any point, and as defendant was not plaintiff's grantor, and plaintiff's grantor did not have any interest in or to said Rossmoyne addition, there is no privity of title between them. No way of necessity can be presumed or acquired over the lands of a stranger. 9 R. C. L. § 31, p. 770. It has also been held that, when easements have been created by sale of lots abutting upon a proposed street or alley, a purchaser of the land set apart for such street or alley at a tax sale is not estopped to interfere therewith by fencing or inclosing the street or alley, inasmuch as he does not claim under the original owner, by whose grants the easements were created. Smith v. Griffin, 14 Colo. 429, 23 Pac. 905.

[3] By the second assignment plaintiff complains that the court erred in denying him the relief sought, because the evidence showed that the fence complained of was a nuisance. He follows this with two propositions to the effect that any fence erected so as to withhold ingress and egress of plaintiff to and from his property, or the ingress and egress of the public to his property, is a nuisance. As found by the court, Wiley Smith in 1877 built a fence on the land on the line between his property on the east and the property on the west, of which plaintiff's is a part, and that fence has been continuously maintained until the laying out of the Rossmoyne addition in 1914 by defendant. The fence complained of is the continuation of the Smith fence, simply being a new one at the old place. It is not contended but that it is on the property of defendant, and there is no evidence that the fence or hedge were constructed or maintained in an improper or unlawful manner. One who uses his property in a lawful and proper manner is not guilty of a nuisance merely because the particular use which he chooses to make of it may cause inconvenience or annoyance to his neighbor, and nothing which is legal in its erection can be a nuisance per se. 29 Cyc. 1159. The assignment is overruled.

By the third assignment of error plaintiff assails the finding of the court that defendant had acquired title to the streets as laid out in the Turner addition situated in the Rossmoyne addition by limitation. In considering this assignment, it is well to take note of the description by which the parties purchased their respective lands. The record discloses that the Republic of Texas patented to Obedience Smith 19 and a fraction labors of land July 23, 1845, in which survey the premises in controversy are located; that on April 21, 1848, said Smith survey was subdivided and a map of said subdivision recorded in the deed records of Harris county, the land or portion here in controversy being lot No. 10 of such subdivision, and containing 50 acres, the same being 564.6 varas, or about 1,570 feet, long from north to south, and 500 varas, or about 1,390 feet, wide from east to west; that in 1848 this 50 acres of lot No. 10 was conveyed to J. A. Harris, who died, leaving as his sole heirs his widow, Mary W. Harris, and four children, Joseph A. Harris, Chas. L. Harris, Ellen H. Harris, and Nettie Harris; that in 1871 the widow, Mary W. Harris, conveyed her undivided one-half interest in said lot to N. P. Turner; that in 1872, by decree of partition of the district court of Harris county, the south half or south 25 acres of said lot 10 was awarded to N. P. Turner, and the north half was divided among said Harris children, Ellen H. Harris being awarded the northwest 6¼ acres, Chas. L. Harris, the southwest 6¼ acres, Joseph A. Harris, the northeast 6¼ acres, and Nettie Harris, the southeast 6¼ acres. The south half of lot 10 acquired by Turner was 785 feet wide by 1,390 feet long. March 28, 1877, Wiley Smith bought from W. S. Dugat (who held the same by trustee's deed from J. B. Likens, trustee for N. P. Turner) all of the Turner south half of lot 10, except a strip 290 feet wide off of the west end, the deed from Dugat to Wiley Smith describing the land conveyed as follows:

"Beginning at an iron stake in the northwest corner of block No. 57, N. P. Turner addition; thence west 1,100 feet to a stake; thence north 785 feet to a stake; thence east 1,100 feet to a stake; thence south along the west line of Nibbs' and Pilant's lands 785 feet to the place of beginning, containing 19.82 acres and embracing blocks Nos. 33, 34, 35, 36, 37, 38, 39, and 40, and fractional blocks Nos. 43 44, 45, 46, of N. P. Turner addition to the city of Houston, in Harris county, Tex., and being a part of the Obedience Smith survey, hereby conveying and intending to convey the property conveyed to me by J. B. Likens, trustee, which deed is of record in Harris County Deed Rec-

ords, vol. 17, p. 170, to which reference is here made. The field notes of a certain tract of land adjoining the west line of Nibbs' and Pilant's land about two miles southwest of the courthouse of Houston, the aforesaid land formerly owned by N. P. Turner described as follows: Beginning at an iron stake in the northwest corner of block 57, N. P. Turner addition; thence west 1,100 feet to a stake; thence north 785 feet to a stake; thence east 1,100 feet to a stake; thence south along the west line of Nibbs' and Pilant's lands 785 feet to the place of beginning, containing 19.82 acres of land, as surveyed by N. Carroll, civil engineer and surveyor.

"N. Carroll, Civil Engineer and Surveyor"

—the parties agreeing that the beginning corner—northwest corner of block No. 57—in this description is at the southwest corner of said lot 10 of the said Obedience Smith survey.

Ellen H. Harris sold her 6¼ acres of the north half of said lot to Wiley Smith April 10, 1877. Chas. L. Harris sold his 6¼ acres to one J. H. Gray, who sold to Wiley Smith on March 28, 1877. By these three purchases made March 28, 1877, and April 10, 1877, Wiley Smith became the owner of the west half of the north half of said lot 10 and all of the south half of said lot 10 except the strip 290 feet wide off the west end. The land claimed by plaintiff is in the north end of this 290-foot strip. Immediately after his purchase of said lands Wiley Smith commenced to fence and improve same, and built a house thereon, and prior to June 1, 1877, went into actual possession of all of said lot 10 so bought by him, having already erected a fence entirely around his said lands. The evidence further showed that the fences built around said land by Wiley Smith remained on the identical lines on which they were originally erected, maintained intact by the several owners and holders of said land, until same came into the possession of defendant, and was in 1914 platted into the Rossmoyne addition to the city of Houston; that, when defendant acquired the Wiley Smith land, it was farm land, under fence. The land plaintiff claims is to the west of same, separated by the division fence erected by said Wiley Smith in 1877, which has been continuously maintained on the exact line on which it was originally erected ever since. The fence and hedge complained of by plaintiff is right up against the old fence on the defendant's side of the line. When defendant laid out the Rossmoyne addition, it laid out same, streets, blocks, alleys and all, wholly within the fences and lines inclosing same. Mt. Vernon street and the alley which plaintiff claims an easement in and over do not touch, front, or abut plaintiff's land at any point, the evidence showing that there is a strip at least one foot wide between plaintiff's land and defendant's land at all points in Mt. Vernon street and said alley on which

is situated the fence and hedge complained of. In other words, the portion bought by Smith in the south half of said lot 10 was a rectangular tract 1,100 feet long by 785 feet wide, containing 19.82 acres of land, which shows that same was surveyed and sold by acres, which included every foot of land within the bounds set forth. It will be noticed that when Smith bought the 19.82 acres in said south half of said lot 10, the line 1,100 feet, if deducted from the whole line, 1,390 feet, left exactly 290 feet. This shows that said south half, or 25 acres, although the same had been platted by N. P. Turner and called the Turner addition to the city of Houston, was afterwards by him, through his trustee, J. B. Likens, sold to W. S. Dugat, and by Dugat to Wiley Smith, by acre measurement, covering and including the entire Turner addition in the south half, other than and except the said 290-foot strip, so that defendant's purchases, being by acreage, included, as to the Turner addition in the south half of lot 10, all alleys, streets, and blocks, by actual measurement, and having been immediately fenced by Smith, and he and those holding under him having continuously cultivated, used, and enjoyed same adversely to all others for and during the period from about June 1, 1877, to the date of trial, defendant and those under whom he held had acquired title by limitation to all of the land, including the streets and alleys in said Turner addition included within the bounds of defendant's tract. It is further to be observed that the Turner addition was never at any time within the corporate limits of the city of Houston or within the limits of any town or municipality. This is admitted by all parties hereto. At the time same was platted by Turner and called the Turner addition to the city of Houston it was three-fourths of a mile from the nearest limits of said city, was then open farm lands, surrounded by farm lands, and was never any part of any municipality until 1913, when the city limits of Houston were extended to include same, and in 1914 the territory was replatted as the Rossmoyne addition by defendant.

[4, 5] But plaintiff insists that, title to public streets having once vested in the public, no individual can acquire sufficient title thereto by limitation as to deprive an abutting owner of his right of ingress and egress. We do not regard this as a sound proposition of law as applied to the facts of this case. Under the facts, a sufficient answer to this contention is that the said Turner addition, when laid out and platted, was not embraced within any municipality, and therefore did not constitute any part of the city of Houston or of any town or city, nor was it the beginning of a new town.

"The legal, as well as the popular, idea of a town or city in this country, both by name and

use, is that of union, community, locality, vicinity; a collective body, not several bodies; a collective body of inhabitants—that is a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interest because residents of same place, not different places. So, as to territorial extent, the idea of a city is one of unity, not of plurality; of compactness or contiguity, not separation or segregation. The statutes which permit municipal corporations to annex territory without special legislative authority in each case always require that the territory so annexed be contiguous, and when the annexation is left in the discretion of a judicial tribunal contiguity will be required as a matter of law." R. C. L. § 40, p. 734.

The Turner addition to the city of Houston, so-called, was, in fact, no addition. It was not contiguous to the city of Houston at any point, but, to the contrary, was three-fourths of a mile from the nearest point of the limits of said city. The word "addition" means to add to, to become united with, to become a part of the subject or matter to which the addition is to be made, and therefore in cases of additions to the territory of towns or cities the territory to be added must be adjoining or contiguous to the territory of the town or city to which it is to be added. And, since the Turner addition was not contiguous or adjoining to the city of Houston, and as same was not any part of any municipality, nor was it the beginning of a new town, then there was no legal dedication of the streets and alleys of same to the use of the public, and especially is this true in the absence of any acceptance of said attempted dedication by user or otherwise. But, if this were not true, still the assignment is not well taken, for article 5683, V. S. C. S., providing that no person, by occupancy or adverse possession, shall acquire title to any part of any street, sidewalk, or ground which belong to any town, city, or county, or which have been dedicated to the public use of any town, city, or county by the owner thereof, did not become effective until July 4, 1887. Prior to that time limitation by occupancy or adverse possession ran against towns and cities and counties, the same as individuals. When Wiley Smith bought the land in the south half of said lot 10, composing the Turner addition (except the 290-foot strip), and fenced, occupied, and improved same in the spring of 1877, the statute of limitation began to run against any sort of claimed dedication or use of same by any other person or entity whatever, and the 10 years necessary to perfect title by limitation had elapsed before said law went into effect July 4, 1887. Therefore, if there had ever been any dedication of the streets in said Turner addition to the public use, limitation had run against same, and the court did not err in so holding. Up to 1887 counties, cities, and towns were not mentioned in any statute of limitation, but in 1887 (Laws 1887, c. 40), the Legislature amended article 3200, Rev. St. 1879 (now article 5683, Vernon's Sayles' Civil Statutes), which amendment went into effect July 4, 1887. Johnson v. Llano County, 15 Tex. Civ. App. 421, 39 S. W. 995; Brown v. Fisher, 193 S. W. 357; Walton v. Harigel, 183 S. W. 785; Hardin County v. Nona Mills Co., 112 S. W. 822; 9 R. C. L. Easements, § 67. This assignment is overruled.

We think, upon the evidence, no other judgment than one in favor of defendant could have been properly rendered.

The judgment should be affirmed, and it is so ordered.