**ROSIER et al. v. OTHEN.**

No. 14005.

Court of Civil Appeals of Texas. Dallas.

May 13, 1949.

Rehearing Denied June 3, 1949.

**595**

Burt Barr and J. Lee Zumwalt, both of Dallas, Texas, for appellants.

Leo R. Tresp and Joe Tresp, both of Dallas, Texas, for appellee.

BOND, Chief Justice.

Plaintiff (appellee) instituted this suit for injunction to restrain defendants (appellants) from interfering with his use of an easement on and across the defendants' land as a way of necessity to and from his home; for mandatory order commanding defendants to remove a dike or levee constructed adjacent to and alongside the roadway, which prevents him and his family from using the roadway or easement; and for damages resulting from such interference and obstruction.

The cause was being submitted to a jury and, at the conclusion of the testimony adduced, all parties agreed that there was no controversial issue of fact to be submitted, and each filed motion for instructed verdict; whereupon, the court discharged the jury, sustained plaintiff's motion, overruled that of the defendants, and entered judgment in favor of plaintiff establishing the easement by way of necessity, permanently enjoining and restraining the defendants from further interference with plaintiff's use of the easement, and mandatorily enjoined, commanded and directed defendants "to take such action as is necessary to put said easement and roadway, as described, in as usable a condition as same was prior to the erection of the levee and dike." The court made no determination of damages, or order for the removal of the levee or dike.

Plaintiff alleged in his petition that he and his family have resided on a 53.5-acre tract of land owned by him, lying immediately east and adjacent to defendants' land, since 1913; that since said time he has openly, continuously and uninterruptedly claimed and used the roadway or easement as an outlet to the public highway mentioned in the record as "Belt Line Road," and that prior thereto his predecessors in title had so claimed and used said roadway or easement for more than 40 years. Plaintiff further alleged, in effect, that Thomas J. Tone is the common source of title (owner) of the entire Thomas J. Tone Survey, in whom rests the unity of title to the respective tracts of land here involved; and that plaintiff's land does not adjoin any other public or private road, or any other survey, and is entirely surrounded by lands out of said Thomas J. Tone Survey; hence the roadway and easement has constituted a way of necessity for plaintiff and his predecessors, in that it has been and is now the only means by which he can reach any public road from his farm and place of residence, and the way has been so established for more than 40 years.

The defendants in answer, by general and special denial, joined issue with plaintiff, claiming that the easement right in question has never been and is not now a way of necessity, either by implication or otherwise; that plaintiff's use, and that of those under whom he claims title, was merely permissive use, not in anyway adverse to defendants' right; and has never been a way of necessity as to deprive defendants

of the full use of their land over which the easement is sought to be established; and, further, that the levee or dike erected by defendants was the exercise of ownership of their land, to protect it from erosion and deterioration.

A "way of necessity" does not arise merely because of necessity. There must be a privity of ownership between the dominant and the servient estates. A long continued use of a roadway or easement right does not, in itself, raise a presumptive "way of necessity" across a stranger's land. The use by permission in such cases, in absence of proof to the contrary, may be presumed. There is no evidence in this record that there has ever been any unity of ownership in respect to the two tracts of land at the time and since plaintiff and defendants acquired their lands as to establish the easement as a way of necessity. The plaintiff is not the defendants' grantor; and the defendants are not the grantors of plaintiff.

In considering appellants' assignments or points of error, it is well to note that the Thomas J. Tone Survey consists of 2,439 acres of land patented to Tone by the State of Texas; subsequently the acreage was acquired by W. M. C. Hill. In 1924, Bud Rosier, deceased, predecessor of defendants' title, acquired from W. M. C. Hill, by mesne conveyance dating back to 1896, the land over which the roadway is claimed to be located. In 1904, the plaintiff Albert Othen acquired 60 acres of his land from W. M. C. Hill, dating back to 1897. After the sale of the aforesaid tracts of land, W. M. C. Hill owned all the remainder of the Tone Survey abutting on the lands theretofore conveyed by him; and in 1899 Hill conveyed 1,350 acres to the American National Bank. In 1902 the American National Bank conveyed the 1,350 acres to J. B. Wilson and John H. Vencill; in 1906 Wilson and Vencill conveyed 100 acres of the 1,350 acres to a Mr. Lumas (this land adjoins the plaintiff's land), and in 1913 Wilson and Vencill conveyed to the plaintiff the 53½ acres which plaintiff now owns and which is involved in this suit.

The statement of facts discloses that two or more maps or plats were used in the interrogation of witnesses. Neither of the maps or plats is found in the record,—in the absence of which much of the testimony is vague, inclusive, and some of it unintelligible. To establish the relative position of the land over which the easement is sought to be established, its location, length, and width, is difficult; however, in the light of the judgment of the trial court we must presume that the location of the tracts of land involved and the course and distance of the roadway are correctly stated in the trial court's judgment. Briefly, we gather that plaintiff's land is wholly surrounded by lands of others; that defendants' land is in two tracts,—16.3 acres in pasture, situated to the west and adjacent to plaintiff's 53.5 acres; and 100 acres in cultivation, lying north and adjacent to the 16.3 acres and west of plaintiff's 60-acre tract, its western boundary fronting on the Belt Line Road. On the north side of plaintiff's land a Mr. Lowe owns a part of the Tone Survey once belonging to W. M. C. Hill, and the American National Bank; to the east and south a Mr. Woolsey also owns a part of the Tone Survey, adjacent to plaintiff's land,—this land once owned by Hill and the Bank. The Lowe and Woolsey lands each have outlets to public roads,—the Lowe land to the north has an outlet to Fishcreek Road about a mile north from plaintiff's land; and the Woolsey land to the south has an outlet about a mile to the Duncanville Road. The roadway or easement here involved, over defendants' land, goes into the defendants' 16.3-acre tract through a gate; thence traverses the 16.3 acres near to its north line, extending into a lane at the south line of the defendants' 100-acre tract; thence in a western direction, where it opens through a gate into the Belt Line Road.

There is no evidence of any express grant, and we think there is no implied grant, as a "way of necessity," as that term is usually applied between dominant and servient owners, over defendants' land; and there is no positive evidence that the use of the roadway by the public or adjacent landowners was ever adverse to the defendants; only inference, arising from circumstances of its long uninterrupted use and the topography of the adjoining lands:—To the north, east and south, across and on the

Lowe and Woolsey lands, are large sizeable creeks and lakes; while to the west, the defendants' land is comparatively level and, but for being boggy during excessive rainfall, is admirably suitable for such a roadway; then, too, the evidence is that the roadway has been used continuously and uninterruptedly for so long a time as to justify inference of adverse claim of right for the purposes of ingress to and egress from plaintiff's farm; and has ripened into right of use by prescription. Then, on the other hand, the evidence discloses that the defendants and their predecessors in title have continuously maintained gates at the terminals of the roadway, one at plaintiff's home, leading into the 16.3-acre pasture, and the other at the west end, leading out to the Belt Line Road; and that they have maintained the lane for their stock, cattle and horses to pass from their barns to their 16.3-acre pasture, which, we think, raises strong inference that the roadway easement was merely permissive, dedicated to all occupiers of the lower lands as users, with knowledge, acquiescence and consent of the owners, as a private passway for ingress to and egress from plaintiff's land. Then, too, the roadway in question has been the only means of ingress and egress, not only for the plaintiff, but for the public and the defendants' tenants occupying a house on the 16.3 acres, continuously for more than 45 years.

■ The adverse claim of right, like any other fact necessary to be proved in any other suit, may be proved by circumstantial evidence sufficient to sustain such conclusion. Hall v. City of Austin, 20 Tex.Civ. App. 59, 48 S.W. 53; Texas & P. Ry. Co. v. Gaines, Tex.Civ.App., 27 S.W. 266; Stanglin v. Loving, Tex.Civ.App., 116 S.W.2d 798. Where claimant shows an open, visible, continuous and unmolested use of a roadway on and across the land of another for more than 45 years, and the facts of the situation are such as to impress the view that the way is the only feasible route for the claimant to reach his home and market, or public road, as here, the right of use as a matter of necessity should not be disturbed. Plaintiff's land is interlocked, thus an extreme necessity exists for passage or easement somewhere through lands of adjacent owners. The defendants' land is the most feasible, if not the only practical means for travel from plaintiff's home to a public road, evidently recognized as such by the defendants and those under whom they claim title since the owner of the unity title of the Tone Survey, from whom both plaintiff and defendants acquired their respective adjacent lands.

The trial court having determined that a necessity exists for the continued maintenance and use of the roadway for ingress to and egress from plaintiff's land, thus restraining the defendants from further interference with plaintiff's use thereof should be affirmed; and the ancillary order, or mandatory injunction, commanding, directing and enjoining the defendants to "take such action as is necessary to put the roadway and easement in as usable a condition as it was prior to the erection of the levee or dike," should be reversed. Manifestly, the commanding order is unlimited, vague and uncertain;—nonenforceable. It provides no "yard stick" by which the defendants could measure their action, thus leaving it to the judgment of the defendants to determine what necessary "action" they shall take, and as to when the easement is in a "usable condition as it was prior to the erection of said levee or dike."

■ Every final judgment, and particularly a mandatory injunction, should plainly, explicitly and specifically dispose of each and every issue presented by pleadings and evidence, to enable enforcement by execution or otherwise. Plaintiff, by petition, sought the removal of the levee and dike, as an obstruction to his enjoyment of the easement; and not to require the defendants to put the roadway and easement in a comparable condition as it was before the erection of the levee or dike. The evidence is that neither the plaintiff nor defendants have ever put the roadway in usable condition during rainy seasons of the year, but only in dry whether was the roadway in any condition for use. The construction of the levee or dike by defendants was a reasonable exercise of their ownership of the land to prevent erosion of the soil, and not a wanton act to prevent reasonable use of travel over the roadway.

We conclude that the judgment of the trial court establishing the easement and enjoining defendants from interfering with plaintiff's use for ingress and egress, not inconsistent with the defendants' use, is affirmed; and that the mandatory injunction commanding the defendants to maintain the road is reversed, and judgment here rendered setting aside the commanding order. Hence the cost of appeal, for reasons above stated, is taxed against appellants and appellee, in equal proportions; costs in the court below are taxed against appellants.

Affirmed in part; reversed and rendered in part.

## On Motions for Rehearing.

CRAMER, Justice.

After a reconsideration of this case on motions for rehearing, a majority of the Court is of the opinion that this case should be reversed and rendered, and the following opinion made the opinion of this Court.

In the lower court appellee sued appellants, alleging that he owned a tract of approximately 113½ acres of land in the Tone Survey about a half mile from the Belt Line Road and about six miles south of Grand Prairie; that none of said lands are adjacent to any public road and he has no means of ingress and egress to his lands except across appellants' land which lies between his land and the Belt Line Road; that he has lived on one part, or tract, of his land since 1904 and since 1913 has continuously claimed and used a roadway and easement from his said property to the Belt Line Road, over the property of appellants and that same has been claimed and used by him and the former owners of his land; that such roadway was claimed and held openly and adversely to appellants and all their predecessors in title since 1904, and for a long time prior thereto; that the entire Tone Survey was formerly owned by Thomas J. Tone and that his property at no point adjoins any other public or private road, nor does his land adjoin any other survey but is surrounded by lands in the Tone Survey; that the road claimed is one of necessity, in that it is his only means of ingress and egress to and from his land and residence, either for himself or those going to and from his home to a

public road; that in using the road he has at all times kept same in proper repair by grading, etc.; that appellants have never interfered with his use of such roadway until about September 1947, when they constructed a dike or levee along the south side of the same, which retards or stops the flow of surface water from the road, making it impassable for long periods of time after rainfall; and that he has for three months been unable to travel the road except by foot. He also plead the 10 and 25-year statutes of limitation, Vernon's Ann. Civ.St. arts. 5510, 5519; alleged damages; and sought a mandatory injunction. Appellants, after denial, plead their use of the land on which the roadway was claimed by appellee; that appellee's use was permissive only, and denied his right to injunction; plead that the topography of the land was such that it drained toward the road; that the surface water was cutting a ditch or gully into the road, which, if not stopped, would cut across the road and make it impassable without a bridge or culvert; that the dike or levee caused the water to spread out and run off the roadway in a southeasterly direction and was built for the purpose of preventing damage to the land, and not to damage appellee; was built under and at the direction and advice of government authorities, especially the Soil Conservation Service (AAA); that appellants' land was the dominant estate and not the servient estate so far as their respective lands were concerned and that appellee had no right to a right-of-way of necessity or otherwise; that the condition of the roadway was brought about through its use by appellee's son-in-law, and others invited by appellee, using the road when it was wet and muddy after rains, passing in and out in tractors, jeeps, etc. By supplemental petition appellee enlarged on his original allegations; denied he ever purposely injured the roadway; that the only way he and those visiting him could get to and from his home over such road in wet weather, and since construction of the levee, was in tractors and jeeps; denied that the levee was constructed under direction of the Soil Conservation Department, but that same was constructed solely by appellants.

At the conclusion of the testimony, both parties made a motion for an instructed verdict; the court overruled appellants' motion, sustained appellee's motion, and rendered judgment establishing an "easement of necessity" forty feet wide and approximately half a mile long; granted a mandatory injunction ordering appellants to "put said easement and roadway, so described, in as usable a condition as same was prior to the erection of said levee or dike"; and permanently enjoined appellants "from any further interference with the use of such easement and roadway by the plaintiff herein," etc. This appeal was properly perfected from that order.

■ Appellants assert that under the evidence there could not be an easement of necessity, as found by the court in her judgment. This assignment should be sustained. The evidence shows without contradiction that all the lands involved were in the Tone Survey, and the land now owned by the Rosiers was sold off by the original owners before they sold the land now owned by Othen. The land now owned by the Rosiers is the dominant estate, so far as the Othen land is concerned. The record shows that the original owner of the lands in the Tone Survey, at the time he sold the Othen land, had lands adjoining the Othen land over which Othen could have reached the Duncanville Road; also land over which Othen could have reached the Fish Creek Road. A witness for appellee, Harry L. Shellito, Sr., testified that he was 79 years old and had lived in the community involved here for 42 years; was familiar with the Othen and Rosier property; that he lived at one time back of the Rosier property and traveled the road in question many times; the Rosiers were there before he was; the road had been traveled, until lately, for the last 40 years; he now owns land adjoining the Othen land; he goes out of his land to the Duncanville Road; that there is a road from his house to Othen's place but there is "a good little branch" between his place and the Othen place; that he travels the road occasionally. He further testified with reference to where he lived, back of the Rosier place, as follows:

"Q. When you used that road was that the only way you had out of your property? A. No, I could get out three or four ways; out through the Duncanville Road or Fish Creek Road."

The record shows that these routes are over lands servient to the Othen land.

■ In order that a right-of-way of necessity may be established, Othen would have to show that his land was sold off by their former grantor before that of the Rosiers was sold. The reverse is the case here. The law is well settled on this question. See 15 Tex.Jur. 784, sec. 16, which reads as follows:

"The general rule is that, where there is conveyed a tract of land which is surrounded by the grantor's land or by his and that of third persons, and to which the grantee can only have access or egress through lands other than that conveyed, the grantee has a right of way by necessity over the remaining lands of the grantor. Moreover, the right exists in the tenants and assigns of the vendee as against the tenants or assigns of the vendor."

In Neblett v. R. S. Sterling Inv. Co., Tex. Civ.App., 233 S.W. 604, 606, error refused, the court said:

"Under this assignment, he submits two propositions, to wit: (1) 'Ingress and egress to property is an absolute necessity, and if one is deprived thereof he is deprived of his property.' (2) 'Where the antecedent grantor conveyed a portion of his land, the law will not presume that he intended to deprive himself of the enjoyment of the remainder.'

"This assignment presents the question that plaintiff has a right of way by necessity over the premises of defendant. In plaintiff's pleading, he asserts that his property fronts and abuts on Pine Street in the N. P. Turner addition, and that Mt. Vernon street in the Rossmoyne addition took the place of Pine street, and that his property fronts and abuts on Mt. Vernon street on the east, and on the alley to the north, and that he had an express easement on and over same, which defendant has obstructed. This pleading does not support an easement by implication or necessity, but, if this were not true, the assignment must be overruled,

for a way of necessity arises only between grantor and grantee, and cannot exist when there was never any unity of ownership. 14 Cyc. 1172. In the instant case defendant was not plaintiff's grantor. There is no privity of title between them. It is well settled that a way of necessity arises where one has sold land to another, not having any outlet save over the land of the grantor, in which the grantor, by implication, grants a right of way, but defendant here was not plaintiff's grantor. Williams v. Kuykendall, Tex.Civ.App., 151 S.W. 629; Alley v. Carleton, 29 Tex. 74, 94 Am.Dec. 260. The rule is equally well settled that necessity alone, without reference to any relations between the respective owners of land, is not sufficient to create this right. The fact that one's land is completely surrounded by the land of another does not, of itself, give the former a way of necessity over the land of the latter, where there is no privity of ownership. Ellis v. Blue Mountain Forest Ass'n, 69 N.H. 385, 41 A. 856, 42 L.R.A. 570."

The common grantor of the parties here, at the time he conveyed the Othen land, had theretofore conveyed the Rosier land, and therefore the Rosier land was not a part of such grantor's remaining land at the time of his conveyance of the Othen land. Therefore, the trial court judgment based upon way of necessity cannot be sustained.

■ But appellee says the easement and right-of-way may be sustained by limitation or prescription. The evidence is uncontroverted that there is a gate where Othen left his land and entered the Rosier land; that the gate was kept shut and that he opened and closed it when he passed through it. He then went along the line fence of the pasture which was used at all times by the Rosiers as pasture for their stock, until he entered a lane which ran from the pasture to the Rosier barn and feed lot, then on past the Rosier home, and then, at the property line on the Belt Line Road, went out a gate which was kept shut and which he opened and closed as he entered the Belt Line Road. The Rosiers used such gate to enter their property and used the lane from their house and barn to the pasture at all times for their own use.

■ Under these facts the use of the road was permissive, only, and such permission could be withdrawn at any time. 21 Tex.Jur. 549, sec. 22, reads as follows:

"Under the general law of title by limitation, possession must be hostile to the true owner in the sense of an intent on the part of the possessor to hold the land as his own, the statutory expression 'claim of right' being construed to signify the requisite that the claimant must not have entered upon the land in subordination to the owner. Claim of right adversely to the owner is also essential to prescriptive title to any easement, including a highway easement. 'The general rule is that, before a highway can be established by prescription, it must appear that the general public, under a claim of right, and not by mere permission of the owner, used some defined way, without interruption or substantial change, for at least the longest period of limitation prescribed by statute in an action involving the title to land.' Obviously the use cannot be adverse where it is, and always has been, by express permission of the owner in terms indicating that he is to be free to withdraw permission. The same is also true where a tacit permission appears. If the rule were otherwise, every license would mature into a legal right, and unneighborly conduct would be encouraged—which is contrary to the policy of the law."

■ Since there were gates at both the entrance and the exit to the land over which the roadway easement is claimed, and the land between the gates was at all times used by the Rosiers, limitation could not be claimed by Othen. Rick v. Grubbs, Tex.Sup., 214 S.W.2d 925. Headnote (2) of the Rick case states, in substance, the Supreme Court's holding (opinion by Justice Hart), as follows:

"Adverse possession cannot exist if occupancy of land involved is shared with the owner or his agents or his tenants." Judge Alexander, when on the Waco Court of Civil Appeals, in Brundrett v. Tarpley, 50 S.W.2d 401, 402, stated the rule as follows:

"The right to an easement by prescription rests upon the presumption that the owner of the land has granted the ease-

ment, and that the grant has been lost. City of Austin v. Hall, 93 Tex. 591, 57 S.W. 563; Porter v. Johnson, Tex.Civ. App., 151 S.W. 599, at page 601; Phillips v. Texas & P. R. Co., Tex.Com.App., 296 S.W. 887, 880. In order for the long-continued use of a roadway to raise the presumption that there was such grant, it must not only be continuous and uninterrupted for the full ten-year period, but the use by those claiming the easement must be adverse under a claim of right. The adverse claim is the very foundation of the right. Use with the permission of the owner will never ripen into prescription. Since the plaintiff was using the roadway with the permission of the owner, he did not acquire a prescriptive right to the easement." (Citing authorities.)

In Nance v. McClellan, 126 Tex. 580, 89 S.W.2d 774, 777, 106 A.L.R. 117 (Com. App., opinion approved by Supreme Court), Justice Smedley stated the rule as follows:

"After a careful examination of all of the evidence, we find that the Court of Civil Appeals correctly concluded that there was no 'controverted issue of fact, as to whether the public had acquired a right to a street in front of the lot * * * by a prescription.' The statement of facts contains no evidence whatever proving or tending to prove that the city or any member of the public ever asserted a right, adverse or hostile, to the title or rights of the railway company, to use the right of way for a roadway or street. On the contrary, all of the facts and circumstances conclusively show that the large area south of the railroad tract was left open and unfenced by the railway company for the convenience of its patrons and the public generally, and that the public used it promiscuously as 'open country' with the owner's permission and not under claim of right. A right cannot be established by prescription unless the use is adverse and under claim of right. 'The foundation of prescriptive title is the presumed grant of the party whose rights are adversely affected; but where it appears that the enjoyment has existed by the consent or license of such party, no presumption of grant can be made.'" (Citing authorities.)

See Weber et ux. v. Chaney, Tex.Civ. App., 5 S.W.2d 213, and Sassman v. Collins, 53 Tex.Civ.App., 71, 115 S.W. 337, error refused, for a full discussion of both Way of Necessity and Roadway by Prescription.

Since under no view of the testimony was there a way of necessity, or title by limitation or prescription, in appellee, the judgment of the court below is, on rehearing, reversed and here rendered for appellants. Mr. BOND, Chief Justice, adheres to the original opinion and for the reasons there stated dissents from the holding of the majority.

BOND, C. J., dissents.

BOND, Chief Justice (dissenting on rehearing).

In the original opinion of this Court, edited by the writer, to which each of my associates agreed, the judgment of the trial court establishing an easement over appellants' land because of extreme necessity and its long-continued and uninterrupted use for ingress and egress for all parties who may have wished to use it, was affirmed; reversed only with respect to the mandatory order directing restoration of the roadway to such usable condition as existed before the levee was constructed by appellants. We reversed and remanded the mandatory order of the trial court because of its generalities, —vague and uncertain as to be unenforceable, and remanded the cause for more direct and positive action on the part of appellants in reference to repair of the easement. Appellee, in motion for rehearing, contends that instead of reversing the mandatory order for the reasons stated, it was the duty of this Court to reform the judgment to comport with the pleadings and evidence, by ordering the removal of the levee, conformable to the condition of the easement before the levee was constructed. On further review, it is evident that the use of the roadway is hindered by the levee obstruction, and, instead of reversing and remanding the mandatory order, this Court should have reformed the order of the trial court and entered judgment commanding appellants to remove the levee obstruction, thus af-

fording appellee the use of the roadway as before.

Furthermore, the evidence (uncontroverted) on which the trial court may well have based the judgment, as she did, shows that the roadway in question was in use as a public way before the lands which it traverses were fenced and when the lands in that vicinity were open pastures. Mr. Shellito, Sr., a resident of that community for 42 years, familiar with the property involved, testified that the road had been traveled by the public for more than 40 years. Mr. Pool testified that he had known the road "definitely, since about 1901" "Q. Was there a fence on both sides of the lane then? A. No, sir. Q. It was open; is that right? A. Yes, sir." Mr. Posey testified that he had lived in that community since December 1895; owned property in the Tone Survey adjacent to Mr. Rosier's land; traveled the road in question in 1896—"1896 or 1897," and that it has been used "continuously as an outlet for Mr. Othen's place" since he has known it. "Q. Now, then, is there any other outlet from Mr. Othen's place to a highway outside of the road—to a public road? A. Well, I don't know of any." Mr. Goldman testified that he was 69 years of age, lived in the community in question "since 1893"; is well acquainted with the road in question since 1893.

"Q. Has there been a passageway or road through there any length of time? A. Yes, sir, there was a ford on the creek east of there and all the Duncanville people coming to Fort Worth or Arlington, driving cattle, would come up that way. It was a direct road to Fort Worth.

"Q. Do you know when this place was put in there, where Mr. Othen now lives? A. When, it was broke out?

"Q. Yes, when was that? A. 1895.

"Q. Was that passageway used then by the people who lived in that place? A. Yes, it was used then.

"Q. Was this lane at that time fenced along here? A. No, it wasn't fenced at that time; just one fence there.

"Q. When was that fence put up there? Can you tell the court? A. Well, it was in 1895 * * * fall of 1894."

The opinion of our Justice Cramer, concurred in by Justice Young, objectively becomes the opinion of this Court, reversing the judgment of the trial court and rendering judgment for appellants, based upon evidence which had been adversely determined by the trial court. The trial court thus having considered the evidence offered in trial of this case, and having determined that the plaintiff (appellee here) has an easement by necessity over the property in question and that he is entitled to continue the use of the easement and roadway, her decision is controlling here. In the very recent case of Smith v. Jordan, Tex.Civ.App.1949, 220 S. W.2d 481, 484, decided a few days ago, opinion edited by Justice Cramer, concurred in by Justice Young, affirming the judgment of Judge Sarah Hughes, it is said, equally pertinent here, "Since the trial court's findings are sustained by substantial evidence, they are binding on us. The judgment is therefore affirmed."

I respectfully dissent, adhering to our former opinion, reformed as hereinabove stated. Accordingly, the judgment of the court below should be affirmed; appellants' motion for rehearing should be overruled.