**MURFF v. DREEBEN et al.**

No. 12678.

Court of Civil Appeals of Texas. Dallas.

April 1, 1939.

Rehearing Denied April 29, 1939.

578

Bird & Bird, of Dallas, for appellant.

Bromberg, Leftwich, Carrington & Gowan, of Dallas, for appellees.

BOND, Chief Justice.

Plaintiff, P. R. Murff, instituted this suit in a district court of Dallas County against defendants, Octavine Dreeben, a widow, and W. H. Vaughan, involving right of passway or easement by prescription, through usage of many years, across defendants' tract of land, for the purpose of ingress and egress to his 40 acres, wholly enclosed by other lands. Plaintiff alleged that such passway or easement began as early as the year 1911; that the land claimed by defendants formerly belonged to Israel Dreeben, deceased, and after his death, descended to his surviving widow, Octavine Dreeben; that defendant Vaughan claimed right in the land by virtue of a lease for excavation of sand and gravel, and that, about April 6, 1937, the defendants closed the entrance to said passway, and otherwise deprived plaintiff of the use thereof. Plaintiff further alleged that his land had no outlet to a public highway, other than the one designated across the Dreeben land, and that he and his predecessor in title, P. S. Walker, have had continuous, peaceable, and adverse possession of the roadway, tenements and easements, using and enjoying the same for more than 25 years prior to the time when defendants interrupted his use thereof.

Plaintiff sought title to his prescriptive right, and injunction to restrain the defendants from interfering therewith.

Defendants answered by general demurrer, general denial, and plea of not guilty.

The cause was being submitted to a jury, and at the conclusion of the testimony adduced, on motion of the defendants, the court peremptorily instructed a verdict in their favor; accordingly entered judgment.

The controlling question in this appeal is, is there any evidence of sufficient cogency in the record to carry the issue of prescriptive easement right to the roadway, leading over the land belonging to appellees. A roadway or easement by prescription is recognized by long continued, unrestricted usage, ordinarily involving factual issue for determination by fact-finding agencies. The time limit of such usage is a question of law; but, where the usage of such roadway or easement involves the limit of time, such becomes an issue of fact. Courts are never warranted in directing a verdict on such controverted issues.

In appraising the merits of an assignment that the court erred in directing a verdict for appellant, or entering judgment non obstante veredicto, the rule, repeated in varying language, with monotonous regularity, by appellate courts, is: "In passing upon the action of a trial court in directing a verdict, a reviewing court must accept as true all evidence which, when liberally construed in favor of the complaining party, tends to support that party's cause; and all of the evidence of the adverse party will be disregarded when in conflict with the evidence of the complaining party". Corbell v. Stengel, Tex. Civ.App., 83 S.W.2d 1084, 1085. See, also, Michaelson v. Green et al., Tex.Civ.App., 85 S.W.2d 1116; Diamond v. Duncan, 107 Tex. 256, 172 S.W. 1100, 177 S.W. 955; St. Louis Southwestern Ry. Co. of Texas v. McCauley, Tex.Civ.App., 134 S.W. 798; Knox & Nunn v. Pierce, Tex.Civ.App., 146 S.W. 703; E. F. Rowson & Co. v. McKinney, Tex.Civ.App., 157 S.W. 271.

We think appellant's allegations, that the roadway in question,—20 feet wide, leading from the northeast corner of Murff's 40 acres; thence north about 300 feet; thence in a northeasterly direction, diagonally across appellees' land to the west boundary line thereof; thence north about 250 feet to the Northwest High-

way—was established for the requisite period of time to give a right of way, or easement by prescription, finds ample support in evidence  The above roadway, alleged and supported by evidence, is indicated on the accompanying map, by a heavy arrow-tipped line, with its termini at the northeast corner of the Dreeben 75-acre tract and the northeast corner of the P. R. Murff (Walker) 40-acre tract, both tracts designated in the diagram: Viz.:

altered or changed in places to accommodate encroachment of the gravel pit.

The testimony·adduced, standing alone, unaccompanied by the diagram, is not clear; however, with the diagram, the course of the roadway is sufficiently definite for the consideration of the jury. J. H. Luna testified that he was familiar with the Murff and Dreeben farms, as indicated on the map, and knew the location of the road; that "It crosses the Dreeben land; you go south on the Northwest

The evidence upon the trial of the case was addressed to the diagram by witnesses, to show the topography of the situation, principally by pointing to the designated objects, and directed the court's and jury's attention to the roadway in dispute, materially clarifying its location, as indicated by the arrow-line.' Immediately north of the indicated road, and· on the Dreeben land, the evidence shows that defendant Dreeben and her lessees have excavated a gravel pit, extending from the Northwest Highway to the indicated road, and, during the course of years, by force of its operation, the road, running diagonally across the Dreeben land, has been slightly

Highway until you get to the Dreeben land; you have to go around the gravel pit there to get to the Walker (Murff) land. The County bought that gravel pit and tore it up over 20 years ago.  The road enters the Walker land on the northeast corner, comes around the northeast corner of the Dreeben land and crosses the Dreeben land.  To my knowledge, I think I can safely say it has been there 20 years.  The road crosses over the land here, south of the gravel pit, and goes a little bit southwest; comes around the northeast corner of the Dreeben land and then it runs diagonally, and comes around the Walker land."  J. H. Knight testified in part, as

follows: "I have known those two farms (Walker and Dreeben) I will say 20 years or longer. Mr. Walker got in and out to his farm down on the east side of the Dreeben place and then cut across to his place. He would go down the east side of the Dreeben place, I would say, 150 or 200 yards. I was born and raised in that neighborhood; I worked on the Dreeben farm on the dragline for the County. There was later a fence put around the County lease. And the roadway run from the gravel pit on the south side, the fence the county put up, I don't believe it runs over the roadway, as I remember, and the county's fence did not include any portion of that roadway over which Mr. Walker entered, went around the Dreeben land and entered his land, the best of my knowledge". C. R. Hansen testified: "I know Mr. P. S. Walker for about 23 years. I am 29 years of age. I know P. R. Murff. I have been on the Walker farm, and know the farm commonly known as the Dreeben land, and have been over it; I went to the Walker farm, went in on the east side, cut across to the Walkers. Walker came in here on the northeast corner of the highway down through the gravel pit and across to the west side, and from the west side to his northeast corner, I worked that farm a little better than ten years ago. I went over the road and there ain't but one change made, and that is the County dug a hole there where he could not go across, varied the road not over twenty feet; that was about twelve years ago." P. D. Walker, son of P. S. Walker—appellant's immediate predecessor in title—testified concerning the location of the road: "We came out the northeast corner of the farm and followed down the Dreeben land a short ways, cut across and up to this house (pointing to map); there wasn't any pit there, but across the land over here, and they turned out there and tried to keep it a good solid road. You could not go on the other side of that deep sand shaft there, but it always stayed practically in that same course on this side there of that store building, or whatever it is there; a shack up there. I continued over the same route from the time I began going out over the Dreeben land until we sold the land. It is the same route that it was then. I remember my father coming out this northeast corner and moving along the north side of the Dreeben fence and cutting across this way where the road has been for 29 years." J. L. Simmons testi-

fied relative to the location of the road, which he had known for 25 years: "The road that I go into the Walker farm comes down from the old California Crossing, the road that runs south to the Dreeben gravel pit and this road comes right up to the gravel pit and comes west to the Munzesheimer land, something like 300 feet back of Mr. Walker's place and comes back to Munzesheimer line and through a gate, entering the Walker place at the northeast corner. That road has been there twenty-five years at least, possibly longer. There has not been any changes much, not any more than the party that had bought it, the party that bought the gravel pit in there some little time ago, I don't remember just how long ago, but when he bought the gravel pit it seems to me that it might have moved the road a little south; I would not say that they moved it at all, but it seems possible that they may have scrouged it a little bit south from where the old road really did run." Mr. E. L. Bowling testified, in part: "I know P. S. Walker. I know where his land is located. I know where the Dreeben land is. You would get in and out of the Walker farm, well, the only way of getting in there was to go south from the Northwest Highway about 100 yards or so. I never did measure it, and don't know how far it would be, but I think it would be about 100 yards, then you go southwest a gradual course that goes straight from the Walker line and you go down about 100 yards and you strike Mr. Walker's place through the northeast corner, and that is where you went into the Walker place. I have known that route in there fifteen years, and there has not been any change in that road that I know of since I have known it". John Simmons testified: "I have gone in and out of the Walker farm, going in and out from the Northwest Highway; about 100 yards from the Northwest Highway south, then took a kinda southwest course across there from the west line, and then south about 100 yards to the northeast corner of the Walker place. The road was on the Dreeben land and that was the way I went in and out of the Walker farm. There has been no material change in that road for the past fifteen years." P. R. Murff testified that he had known the Dreeben land and the road in question for 12 or 15 years; that: "I was on the place I will say, eight or ten times, back to twelve or fifteen years ago. I got onto the Walker

land starting from the Northwest Highway, * * * and looking south, you will turn up that point and go about 250 ft south, and you turn to your right in a westerly direction and go approximately 680 feet, something like that, and then go, coming to the west line of the Dreeben property, turn south going something like 300 feet to the northeast corner of my property. I went over that road every time I went in there; it has been there to my knowledge twelve years. There has been practically no change. That road might have been changed ten or fifteen feet from one point to another where the gravel pit worked against it that way. It must have been something like 20 feet wide."

There is much other testimony in the record, similar to that above related, bearing on the location of the road across the Dreeben property; while in itself not clear, as shown above, yet, accompanied by the sketch offered in evidence, to which the witnesses referred, sufficiently demonstrates the location of the road in question, and its usage by appellant and his predecessor in title, P. S. Walker, without material deviation or restriction for, at least, a period of more than twelve years, thus ripened into preemption.

■ To establish a private right of way by prescription, the line of travel must be definite; any material deviation or variance for the requisite period does not establish a prescription right, but a slight divergence would not defeat such right, especially so, where such slight divergency was not the voluntary act of the preemptor, but due to force of circumstances beyond his control, and the result of acts and conduct of the adverse party. There is evidence in the record that appellant's land is interlocked, thus a necessity existed for a passway or easement somewhere, through lands of adjacent owners, and that any change, deviation, or variance in such passway was due exclusively to the acts of appellees, and their predecessors in excavating a gravel pit at and near the preemption, as to cause passage to diverge slightly in places, about 20 feet from its regular course.

■ In Sassman v. Collins, 53 Tex.Civ. App. 715, 115 S.W. 337, 339, the Austin Court of Civil Appeals laid down the rule applicable here, we think, saying: "It is held that a person who claims an easement over the land of another by adverse possession for over 10 years must show that such adverse possession has been in the same place and within definite lines. Garnett v. City of Slater, 56 Mo.App. 207. The practice of passing over land in different directions, however long continued, does not establish a right of way by prescription. Jones v. Percival, 22 Mass. 485, 16 Am.Dec. 415; Bushey v. Santiff, 86 Hun 384, 33 N.Y.S. 473; Follendore v. Thomas, 93 Ga. 300, 20 S.E. 329; Johnson v. Lewis, 47 Ark. 66, 14 S.W. 466; 14 Cyc. p. 1153. If there was only a slight divergence, this principle, it seems, would not apply."

Construing the testimony for the purposes here, in the light most favorable to appellant, it is sufficient to carry the issue to the jury. The evidence interpreted shows that the passway enters appellees' land at its northeast corner, thence extends south about 250 feet, thence in a southwesterly direction, diagonally across appellees' land to a point in their west line, about 100 yards from appellant's northeast corner, thence south to the corner. If any variance existed in the course, which some of the witnesses said there might have been, it was in the southwest diagonal portion crossing appellees' land, and due to appellee's and her lessees' operation of the gravel pit. Thus, after discarding all adverse evidence, giving credit to all evidence favorable to plaintiff, and indulging in every legitimate conclusion favorable to him, the jury might have found in his favor. Otherwise, we express no opinion on the weight of the evidence.

The judgment of the court is reversed and cause remanded.