ALBERT OTHEN V. ESTELLA ROSIER ET AL.

No. A-2317. Decided January 11, 1950.
Rehearing overruled February 22, 1950.
(226 S. W., 2d Series, 622.)

486

*Tresp & Tresp* and *Joe L. Tresp,* all of Dallas, for petitioner.

It was error for the Court of Civil Appeals to hold, as a matter of law, that petitioner could have no way of necessity over the land of respondent. Said court also erred in holding, as a matter of law, that petitioner could have no easement by prescription. Bains v. Parker, 143 Texas 57, 182 S. W. (2d) 397; Foster v. Patton, 104 S. W. (2d) 944, error dismissed; Phillips v. Texas & Pac. Ry. Co., (Com. App.) 296 S. W. 877.

*Burt Barr* and *J. Lee Zumwalt,* all of Dallas, for respondents.

In support of the judgment of Court of Civil Appeals, which respondents contend is correct, they cite: Galveston v. Menard, 23 Texas 410; Weidemeyer v. Reitch, 108 S. W. 167; Callan v. Walters, 190 S. W. 829; Lantry-Sharpe Contracting Co. v. McCracken, 105 Texas 407, 150 S. W. 1156.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

Petitioner, Albert Othen, brought this suit to enforce a roadway easement on lands of respondents, Estella Rosier et al., claiming the easement both of necessity and by prescription.

The land of both parties is a part of the Tone Survey of 2493 acres, all of which was formerly owned by one Hill. Othen owns tracts of 60 and 53 acres, respectively. The 60 acres was deeded by Hill to one O'Harlan on Feb. 20, 1897, and by mesne conveyance Othen acquired it on Dec. 12, 1904. Hill sold the 53 acres on Jan. 26, 1899, and Othen acquired it on Nov. 15, 1913. The Rosiers own tracts of 100 and 16.31 acres, respectively. The 100 acres was conveyed by Hill to one Woosley on Aug. 26, 1896, and the 16.31 acres was sold by Hill on Jan. 26, 1899; thereafter by mesne conveyance both tracts were acquired by one Penn, who on Jan. 29, 1924, conveyed them to the Rosiers. Along its west side the 100 acres abuts on the

Belt Line Road, a public highway running north and south. The 16.31 acres joins the 100 acres on the south, the northeast corner of the smaller tract being in the south line of the 100 acres at a point west of its southeast corner. Othen's 53 acres lies immediately east of Rosier's 100 acres. His 60 acres lies south of and adjoining his 53 acres and immediately east of Rosiers' 16.31 acres but extends beyond the south line of that tract. The Tone Survey touches three roads: the Belt Line Road, which runs along its west side; the Duncanville Road, which borders it on the south; and the Fish Creek Road, which is its north boundary. But Othen's 113 acres is not contiguous to any of them; so he must cross somebody else's land to get out to a highway. That he had accomplished before the happening which precipitated this litigation by going through a gate in the west line of his 60 acres and in the east line of Rosiers' 16.31 acres, a short but unproved distance south of the south line of Rosiers' 100 acres; thence west-northwesterly across the 16.31 acres into a fenced lane which runs along the south side of Rosiers' 100 acres; thence through this lane to a gate, which opens into the Belt Line Road. Near this gate and in the southwest corner of the 100 acres was the Rosiers' dwelling house, orchard, stock lots and barns. The Rosiers travel and use the lane above described for such purposes as go with the operation of a farm, as well as for their stock to travel to and from the 16.31 acres, which they use as a pasture and from which they get fire wood. On the 16.31 acres is a tenant house, which has been occupied some of the 18 or 20 years previous to the trial by tenants of the Rosiers; and they have made the same use of the lane as Othen has made. The south fence of this lane was built about 1895. Its north fence and the outside gate were constructed about 1906. Before Othen bought his 60 acres in 1904 he had lived on it for two years as a tenant and had moved away for about a year; and he has continuously used the disputed roadway to get to and from the highway from and to his home.

It seems undisputed that the Rosiers made whatever repairs were necessary to keep the lane usable. And, so far as the record shows, nobody else recognized any obligation or claimed any right so to keep it. The surface waters flowing into the lane had cut out a large ditch which threatened to encroach across the roadway and rended it impassable unless a bridge should be built across it, and these waters threatened erosion damage to Rosiers' cultivated land. To remedy that situation the Rosiers caused a levee 300 feet long to be constructed as close as possible to the south fence of the lane, with something like half

of it in the lane and the other half curving southeasterly into the 16.31 acres. This levee impounded the waters draining southward off Rosiers' 100 acres and made the lane so muddy that for weeks at a time it was impassable except by horseback, thereby, Othen alleged, depriving him of ingress and egress to and from his farm. So he filed this suit praying a tempoarry writ of injunction enjoining the Rosiers from further maintaining this levee and a "mandatory writ of injunction commanding and enjoining and restraining the said defendant from further interfering with" his "use of such easement and roadway" and for damages.

The trial court found that Othen had an easement of necessity and adjudged it to him "upon, over and across" land of the Rosiers beginning at the northeast corner of the 16.31 acres and extending westward "along the said 16.31 acre tract and having a width of approximately 40 feet" to a point in its north boundary immediately east of the nortwest corner of the 16.31 acres, thence across that boundary line and westward along the south boundary line of Rosiers' 100 acres to its southwest corner and into the Belt Line Road. The judgment further ordered the Rosiers "to take such action as is necessary to put said easement and roadway, so described, in as usable a condition as same was prior to the erection of said levee."

The Court of Civil Appeals first affirmed the judgment in so far as it decreed Othen a roadway easement of necessity but reversed the injunction phase of it because that order is too vague and uncertain to be enforceable. However, on rehearing the majority concluded that Othen has no easement either of necessity or by prescription and rendered judgment for the Rosiers, Chief Justice Bond dissenting. 221 S. W. (2d) 594. That conclusion is attached here in two points of error.

■ In support of his claim to an easement of necessity, Othen quotes from 15 Tex. Jur., Sec. 16, p. 785, as follows: "Furthermore, the grantor impliedly reserves for himself a right of way where he sells land surrounded by other land of which he is owner, and to which he can have access or egress only through the granted premises, and the servient estate is charged with the burden in the hands of any vendee holding under the conveyance." That statement is in line with the recent holding by this court in Bains v. Parker, 143 Texas, 57, 182 S. W. (2d) 397: "Where a vendor retains a tract of land which is surounded partly by the tract conveyed and partly by the lands of a stranger, there is an implied reservation of a right of way

by necessity over the land conveyed where grantor has no other way out." In 28 C. J. S., Easements, Secs. 34 and 35, pp. 694 et seq., it is made clear that before an easement can be held to be created by implied reservation it must be shown: (1) that there was a unity of ownership of the alleged dominant and servient estates; (2) that the roadway is a necessity, not a mere convenience; and (3) *that the necessity existed at the time of severance of the two estates*. And see 17 Am. Jur., Easements, Secs. 43 and 49, pp. 953 and 963.

Under the foregoing authorities, Othen's claim to an implied reservation of an easement in a roadway means that when Hill, the original owner, sold the 116.31 acres to the Rosiers it was then necessary, not merely convenient, for him to travel over it from the 113 acres now owned by Othen in order to get to and from the Belt Line Road. In determining that question we shall ignore the Duncanville Road to the South, which was established in 1910, as well as the Fish Creek Road to the north, although the record is silent as to when the latter came into existence.

■ As already stated, the entire Tone Survey of 2493 acres was owned by one Hill, in whom was unity of ownership of the lands now owned by the parties to this suit. On August 26, 1896, he sold the 100 acres in question to Rosiers' predecessors in title, retaining the south 60 acres now owned by Othen, which he conveyed on February 20, 1897. In the deed of date August 26, 1896, did he impliedly reserve the roadway easement from the 60 acres, which he retained over and across the 16.31 acres which he did not convey until January 26, 1899, thence on and along the south side of the 100 acres to the Belt Line Road? Obviously, no such easement arose as to the 16.31 acres over which the trial court decreed Othen a roadway, because Hill did not part with his title to it until two years and five months after he sold the 100 acres and about two years after he sold the 60 acres which Othen now owns; one cannot be said to have an easement in lands, the fee simple title to which is in himself. Alley v. Carleton, 29 Texas, 74, 94 Am. Dec. 260. Under the record before us we cannot hold that petitioner has shown any implied easement as to the 100 acres by reason of the deed of August 26, 1896, because the record nowhere shows that the roadway along the south line of the 100 acres was a necessity on the date of that deed, rather than a mere convenience. The burden to prove that was on Othen. Bains v. Parker, supra. There was testimony that it was the only outlet to a public road since about 1900 and for the "last

40 years"; *but there was none as to the situation on August 26, 1896.* One Posey did testify that the owner of the "Othen land" (necessarily the 60 acres) in 1897 "came out up across the south side of the place to the road there", but he did not testify that it was then the only roadway out. On that proposition his testimony was: "Q. Now, then, *is* there any other outlet from Mr. Othen's place to a highway, outside of the road—to a public road? A. Well, I don't know of any." (Italics ours.) The record does not show just how much of the Tone Survey Hill owned when he conveyed the 100 acres on August 26, 1896, but it does appear from a stipulation of the parties that he owned as much as 1350 acres of it until January 26, 1899; and Othen's 53 acres and Rosiers' 16.31 acres were a part of that tract. So, for all the record shows, Hill may easily have been able to cross the 53 acres and around north of the 100 acres on to the Belt Line Road, or he may as easily have been able to go from the 16.31 acres southwesterly to that road across land which he still owned. Certainly Othen should have excluded any such possibility by proof if he would raise an implied reservation in derogation of the warranties in Hill's deed of date August 26, 1896. Rights claimed in derogation of warranties are implied with great caution, hence they should be made clearly to appear. Sellers v. Texas Cent. Ry. Co., 81 Texas, 458, 17 S. W., 32, 13 L. R. A. 657; Scarborough v. Anderson Bros. Const. Co. (Civ. App.), 90 S. W. (2d) 305 (er. dism.).

■ What we have said determines Othen's claim to a way of necessity; such as easement necessarily can arise only from an implied grant or implied reservation. 17 Am. Jur., p. 959, Sec. 48. This results from rule that the mere fact that the claimant's land is completely surrounded by the land of another does not, of itself, give the former a way of necessity over the land of the latter, where there is no privity of ownership. Neblett v. R. S. Sterling Inv. Co. (Civ. App.), 233 S. W., 604 (er. ref.); Parker v. Bains (Civ. App.), 194 S. W. (2d) 569 (er. ref., N. R. E.); Brundrett v. Tarpley (Civ. App.), 50 S. W. (2d) 401; Texas & N. O. R. R. Co. v. Millard (Civ. App.), 181 S. W. (2d) 842. "It is dependent upon an implied grant or reservation, and cannot exist unless it is affirmatively shown that there was formerly unity of ownership of the alleged dominant and servient estates, for no one can have a way of necessity over the land of a stranger. Necessity alone, without reference to any relations between the respective owners of the land, is not sufficient to create such a right." Ward v. Bledsoe (Civ. App.), 105 S. W. (2d) 1116.

Petitioner's other point complains of the holding of the Court

of Civil Appeals that, as a matter of law, he has no easement by prescription.

■ An important essential in the acquisition of a prescriptive right is an adverse use of the easement. "Generally, the hostile and adverse character of the user necessary to establish an easement by prescription is the same as that which is necessary to establish title by adverse possession. If the enjoyment is consistent with the right of the owner of the tenement, it confers no right in opposition to such ownership." 17 Am. Jur., Easements, Sec. 63, p. 974, citing cases from 22 jurisdictions, among which are Weber v. Chaney (Civ. App.), 5 S. W. (2d) 213 (er. ref.), and Callan v. Walters (Civ. App.), 190 S. W. 829. Therefore, the same authority declares in Sec. 67, at page 978, "The rule is well settled that use by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription, since user as of right, as distinguished from permissive user, is lacking", citing, among other cases, Klein v. Gehrung, 25 Texas Supp., 232, 78 Am. Dec. 565.

In Klein v. Gehrung, it is said: "The foundation of prescriptive title is the presumed grant of the party whose rights are adversely affected; but where it appears that the enjoyment has existed by the consent or license of such party, no presumption of grant can be made."

In Weber et ux. v. Chaney, supra, the Webers sued to require Chaney to reopen a road through his farm to public use. Before Chaney closed it such of the public as had occasion to do so used the road as if it had been an established highway. Chaney, his family, tenants and employees likewise used it. Although Chaney never made any objection to the public using the road, he at all times maintained three closed gates across it and the public usually closed them after passing through. It was held that this use by the public was a permissive use which, in the absence of any adverse claim of right against Chaney, could never ripen into a prescriptive right against him so as to constitute the road a public highway.

Callan v. Walters, supra, holds that where both the owner and the claimant were using a common stairway, each to get into his own building, the claimant's use was not adverse because not exclusive. "The use of a way over the land of another when the owner is also using the same is not such adverse possession as will serve as notice of a claim of right, for the reason that the same is not inconsistent with a license from the owner."

In Sassman v. Collins, 53 Texas Civ. App., 71, 115 S. W., 337 (er. ref.), Collins sued to enforce a roadway across Sassman's land, alleging that he had an easement therein both of necessity and by prescription. Collins and others did use the roadway to get to a public road but Sassman and his predecessors in title likewise used it for the same purpose. The court held that under those circumstances the use of the roadway by the claimant and others is presumed to be with the consent of the owner and not adverse.

In Tolbert et al. v. McClellan (Civ. App.), 241 S. W., 206, it was sought to enforce the public right to a road across McClellan's land by prescription based on 30 years' use. It was shown that the road was entered through gaps in the fence around McClellan's farm; and that during the greater part but not all of the 30 years these gaps were closed by gates provided by McClellan. It was held that the use made of the road by the public was only permissive and did not exclude any individual right of McClellan inconsistent therewith.

To the same effect is Williams v. Kuykendall (Civ. App.), 151 S. W., 629, citing Texas West. Ry. v. Wilson, 83 Texas, 153, 156, 18 S. W., 325.

There is a criticism of the foregoing authorities in Foster et al. v. Patton (Civ. App.), 104 S. W. (2d) 944 (er. dism.), wherein it is said that a use by the owner should not be regarded as of itself sufficient to show that a corresponding user by the claimant is merely permissive. However, as the opinion itself frankly recognizes, the holding is dictum, so we must give effect to the authorities above discussed.

■ It is undisputed that the road along the Rosiers' 100 acres has been fenced on both sides since about 1906; that the gate opening from the lane into the Belt Line Road was erected at the same time and has been kept closed by the Rosiers and Othen as well as by all parties using the lane as an outlet to the road; that the Rosiers and their tenants have used the lane for general farm purposes as well as to haul wood from the 16.31 acres and to permit their livestock to get to and from the pasture. Under those facts, we conclude that Othen's use of the roadway was merely permissive, hence constituted only a license, which could not and did not ripen into a prescriptive right.

■ But Othen insists that he had prescriptive title of 10 years

to the easement before the lane was fenced and the gate opening into the Belt Line Road was erected in 1906, because "at least since 1895 and probably since 1893 said roadway has been established and claimed by petitioner and others." Othen testified that about 1900 he moved onto the 113 acres in question as a tenant and lived there two years, moved away for about 11 months, then "bought it and moved back." It is obvious that he did not use the roadway in any way for any period of 10 years prior to 1906. The testimony as to its use by Othen's predecessors is, in our opinion, too vague and uncertain to amount to any evidence of prescriptive right to the roadway decreed by the trial court. For example, when Othen was asked to "tell the court what the condition of that passageway was there," he answered: "Well, in that day and time it was just prairie and there were some hog wallows which would hold water. You would just pick your place round about; if there was a hog wallow, go around it and come on in. But that was the general direction through there." Another witness, asked whether in 1901 there was a road "by the side of the present Rosier property", replied: "It was on the present Rosier property, and at that time went up through the edge of the field." When asked by Othen's counsel, "Do you know anything about where this road used to run?", Mrs. Rosier said: "Well, it didn't run up exactly next to the Belt Line like it is running now." It cannot be said that this showed only a slight divergence in the directions taken by the roadway before 1904, therefore Othen did not discharge his burden of showing that his predecessors' adverse possession was in the same place and within the definite lines claimed by him and fixed by the trial court. Sassman v. Collins et al., supra; Williams v. Kuykendall, supra; Murff v. Dreeben (Civ. App.), 127 S. W. (2d) 577 (er. dism.).

■ Moreover, since Hill did not part with his title to Othen's alleged dominant estate until 1897 (as to the 60 acres) and until 1899 (as to the 53 acres) and did not part with his title to 16.31 acres of the Rosiers' alleged servient estate until 1899, Othen could not under any circumstances have perfected prescriptive title to a roadway easement on the 16.31 acres prior to 1906. "Since a person cannot claim adversely to himself, the courts uniformly maintain that the prescriptive period does not begin to run while the dominant and servient tracts are under the same ownership." 17 Am. Jur., Easements, Sec. 69, p. 980.

It follows that the judgment of the Court of Civil Appeals is affirmed.

Opinion delivered January 11, 1950.

Rehearing overruled Feb. 22, 1950. Justice Taylor dissenting without an opinion.