NO. 07-08-0299-CV

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL A

 JULY 14, 2010

 STEPHEN E. MARTIN, APPELLANT

 v.

 GENE OLIVER "BUDDY" COCKRELL, APPELLEE

 FROM THE 31ST DISTRICT COURT OF GRAY COUNTY;

 NO. 34,879; HONORABLE STEVEN R. EMMERT, JUDGE

Before CAMPBELL, HANCOCK and PIRTLE, JJ.

 OPINION

 Appellant, Stephen E. Martin, appeals from a judgment rendered
in favor of Appellee, Gene Oliver "Buddy" Cockrell, following a jury
trial of Cockrell's declaratory judgment action seeking to establish
an equitable easement by estoppel across Martin's property. By seven
issues, Martin contends (1) the evidence is legally insufficient, (2)
the evidence is factually insufficient to support a finding of an
easement in the pasture road across his property, (3) Cockrell failed
to submit or request jury questions on one or more essential elements
of his easement by estoppel claim, (4) the Court's charge failed to
properly instruct the jury on the nature and scope of the easement
claimed, (5) the trial court improperly expanded the scope of the
easement, (6) the jury erred in failing to award him damages for
Cockrell's trespass, and (7) the trial court erred in failing to award
him recovery of attorney's fees. We reverse and render in part and
affirm in part.

 Background

 At issue in this appeal is a pasture road located in Gray
County, Texas, that begins at the southern tip of County Road 24 and
traverses Martin's property south through Sections 113 and 84, Block M-
2 of the BS&F Survey (Survey) to the northern middle section of
Cockrell's property, Sections 114 and 83, Block M-2 of the Survey.
Following a jury trial, the trial court issued a judgment awarding
Cockrell, his heirs, successors and assigns, a permanent equitable
easement of ingress and egress over Martin's property for agricultural
purposes.

 The Joneses and Ingrums

 At trial, Paul Jones testified his family built the pasture road
on Sections 113 and 84 of Block M-2 of the Survey (the "Jones
property") from a cow trail in the late 1930s or early 1940s. The
Jones family used the pasture road to tend to their cattle. In 1941,
the Ingrums purchased Sections 114 and 83 of Block M-2 of the Survey
(the "Ingrum property"). The northern border of the Ingrum property
abutted the southern border of the Jones property.

 From the early 1940s, Larry Ingrum testified the Ingrums usually
used the pasture road on the Jones property to exit their property and
travel north to County Road 24. They placed cattle in the pasture
nearest to the Jones property so they wouldn't have to ride two
pastures. The Ingrums would typically enter their property from the
west side, come down through the middle tending their cattle and then
exit their property using the pasture road on the Jones property. At
some indeterminate time, the Ingrums built some cattle pens and a
couple of windmills in the middle pasture and used the pasture road on
the Jones property to service the windmills.

 Ingrum testified there was a gentlemen's agreement between his
family and the Joneses permitting the Ingrums to enter and exit their
property over the pasture road on the Jones property. There was no
written agreement or contract. The Ingrums used the pasture road on
the Jones property "by friendly neighbourly permission"--"[b]oth sides
just did what they did." Ingrum further testified they "never claimed
to have a legal right to use the road" and agreed that their right to
use the road was "consistent with friendly permission."

 Jones testified his family didn't have "a problem with [the
Ingrums] using the road," the two families were "just friends"---
"friendly use of the road." He testified "[n]obody ever asked
permission to use the road and permission was never given." Jones
testified that on two different occasions, one of Ingrum's hands
pulled off the road onto the pasture and damaged his grass. He
testified he told the Ingrums he wanted it stopped and it stopped. He
also testified his family "never gave anyone an easement to use the
road."

 The Martins and Cockrells

 In 2000, Alice Ingrum Gray inherited the Ingrum property. She
had two sons, Gene Oliver "Buddy" Cockrell and Lee Cockrell, Alice's
guardian. Also, in 2000, Martin purchased the Jones property from
Paul Jones.[1]

 From 2001 to 2006, Martin leased the Ingrum property from May to
October of each year for grazing purposes. During the lease periods,
between 2003 and 2006, Martin's wife, Susan, cared for their cattle on
the Ingrum property approximately three times a week. Because the
Martins were not living on the Martin property at the time, Susan
would enter and exit the Ingrum property via Gray County Road 22 off
Highway 152, or she would cross the Ingrum property and exit on County
Road 26. She testified it was unnecessary for her to use the pasture
road in dispute to care for their cattle on the Ingrum property. When
accessing the north middle pasture on the Ingrum's property, the
difference between using the disputed pasture road and Ingrum's entry
roads was simply a matter of convenience, rather than necessity. The
distance required to travel to access the north middle of the Ingrum
property from Ingrum's road was approximately eight miles, whereas
access via the disputed pasture road was approximately five miles.

 Susan also testified the Ingrum roads were "perfectly good" and
provided access to the Ingrum windmills and caliche pit. If the
Ingrum roads were graded, she testified they could drive large water
testing trucks or windmill service trucks over the roads. While
caring for the cattle on the Ingrum property, Susan drove a one-ton
pickup truck with a sixteen foot gooseneck trailer.

 Between 2000 and 2002, Martin did not observe anyone, or
evidence of anyone, traveling over the disputed pasture road. In
2002, however, Martin gave Gray County permission to use the pasture
road to haul caliche dug from a pit on the Ingrum property.[2] Gray
County Commissioner Joe Wheeley testified Martin gave the county
permission to haul caliche across the pasture road via a "gentlemen's
agreement," not a formal easement.

 In order to use the pasture road year-round to haul caliche,
with Martin's permission, the county applied caliche to the road.[3]
For their convenience, the county also installed a culvert or cattle
guard where the Ingrum property adjoined the Martin property and, to
protect the county's caliche, Martin installed a combination lock at
the point of entry to the Ingrum property from the pasture road in
2002. When the county ceased hauling caliche in 2006, the county
removed the culvert or cattle guard, removed the caliche from a
portion of the pasture road, and plowed and seeded the roadway to
return the pasture road to its original condition per Martin's
request.

 In November 2006, Cockrell asked Martin for the combination to
the locked gate between the Ingrum and Martin properties in order to
check the windmills located in Ingrum's middle pasture. Martin gave
Cockrell the combination. Three days later, Marshall Hopkins began
parking heavy equipment on Martin's property intending to haul caliche
out of the Ingrum pit to satisfy his requirements for a local job for
Teja Feeders. When Martin questioned Hopkins's use of the pasture
road, Hopkins told Martin that Cockrell had given him permission to
haul the caliche over the pasture road. Martin refused to allow
Hopkins use of the road and Hopkins removed his equipment. Days
later, Martin installed a combination lock on the gate located at the
juncture of County Road 24 and the pasture road on his property. He
did not give this combination to Cockrell.

 In April 2007, Cockrell agreed to settle his mother's estate
with his brother. As a result of the settlement, Cockrell received
the Ingrum Property.[4] Shortly thereafter, Cockrell informed Martin
that he would not lease his pasture to Martin because he was giving
his middle pasture a rest.[5] Later, Cockrell called Martin and asked
for the combination to the lock on the gate where County Road 24 met
the pasture road on Martin's property. Martin agreed to meet Cockrell
at the gate and let him in and out. Cockrell responded that the
arrangement was unworkable. In June or July 2007, Cockrell again
approached Martin in order to obtain the combination to the locked
gate and Martin refused to give Cockrell the combination.[6] Shortly
thereafter, Cockrell filed suit to obtain use of the pasture road.

 Court Proceedings

 On August 17, 2007, Cockrell filed a petition seeking a
temporary injunction restraining Martin from denying him access to the
Cockrell property over the pasture road on Martin's property. After a
hearing on September 14, 2007, the trial court granted a temporary
injunction enjoining Martin from restricting Cockrell's use of the
pasture road for agricultural purposes.

 After the temporary restraining order, Martin gave Cockrell the
combination to the lock installed on Martin's gate between County Road
24 and the pasture road. Thereafter, Cockrell and Hopkins traversed
the pasture road with heavy equipment to remove caliche from the pit
to shore up a windmill on the Cockrell property. In the process, they
drove off the pasture road into Martin's pasture.

 On January 16, 2008, Martin counterclaimed against Cockrell for
possession of the pasture road, an order barring Cockrell from using
the pasture road, trespass, and damages to repair his pasture. On
January 31, 2008, Cockrell filed his first amended petition asserting
a permanent equitable easement or easement by estoppel permitting him
to use the pasture road on Martin's property. On February 11, 2008,
Cockrell also filed a supplemental petition requesting that the trial
court declare him an equitable easement over the pasture road pursuant
to the Texas Declaratory Judgment Act and award him recovery of
reasonable attorney's fees.

 Following a two-day trial, the jury found that Cockrell had an
equitable easement to use the pasture road, Cockrell trespassed on
Martin's property when Hopkins's equipment was driven outside the
pasture road, Cockrell's use of a passageway alongside the pasture
road was not privileged, and Martin was entitled to no damages for
Cockrell's trespass. On June 12, 2008, the trial court entered
judgment granting Cockrell a permanent easement of ingress and egress
over the pasture road on Martin's property for agricultural purposes
and that Martin take nothing as to his counterclaim. Martin gave
timely notice of appeal.

 Discussion

I. Legal Sufficiency

 A. Standard of Review

 In conducting a legal sufficiency review, we must consider the
evidence in the light most favorable to the challenged finding,
indulge every reasonable inference to support it; City of Keller v.
Wilson, 168 S.W.3d 802, 822 (Tex. 2005), and credit favorable evidence
if reasonable jurors could while disregarding contrary evidence unless
reasonable jurors could not. Id. at 827. A challenge to legal
sufficiency will be sustained when, among other things, the evidence
offered to establish a vital fact does not exceed a scintilla.[7] Id.
at 810. In addition, so long as the evidence falls within the zone of
reasonable disagreement, we may not invade the fact-finding role of
the jurors, who alone determine the credibility of witnesses, the
weight to be given their testimony, and whether to accept or reject
all or part of their testimony. Wilson, 168 S.W.3d at 822.
Generally, if an appellate court sustains a "no evidence" or "legal
sufficiency" issue, the appellate court must reverse and also render
judgment. See In re State ex rel. K.D.C., 78 S.W.3d 543, 551
(Tex.App.--Amarillo 2002, no pet.) (citing Vista Chevrolet, Inc. v.
Lewis, 709 S.W.2d 176, 176 (Tex. 1986)).

 B. Easement by Estoppel

 The doctrine of equitable estoppel or estoppel in pais is an
exception to the statute of frauds;[8] Cleaver v. Cundiff, 203 S.W.3d
373, 375 (Tex.App.--Eastland 2006, no pet.), and, "[b]eing a creature
of equity, it seeks to prevent injustice and to protect innocent
parties from fraud." Storms v. Tuck, 579 S.W.2d 447, 451 (Tex. 1979).
 Under this doctrine, a landowner may be estopped from denying the
existence of an easement created by "representations" upon which
another has detrimentally relied. Cleaver, 203 S.W.3d at 375. The
doctrine was first discussed in Texas jurisprudence more than 125
years ago when the Supreme Court articulated the rationale for the
doctrine of easement by estoppel:

 The owner of land may create an easement by a parol agreement or
 representation which has been so acted on by others as to create
 an estoppel en pais. As where he has by parol agreement granted
 a right to such easement in his land, upon the faith of which the
 other party has expended moneys which will be lost and valueless
 if the right to enjoy such easement is revoked, equity has
 enjoined the owner of the first estate from preventing the use of
 it.

F.J. Harrison & Co. v. Boring & Kennard, 44 Tex. 255, 267-68 (1875).

 Essentially, estoppel in pais holds that the owner of a servient
estate may be estopped to deny the existence of an easement[9] by
making representations that have been acted upon by the owner of the
dominant estate to his detriment; Storms, 579 S.W.2d at 451, and "is
grounded on the condition that justice forbids one to gainsay his own
acts or assertions." Wallace v. McKinzie, 869 S.W.2d 592, 595
(Tex.App.--Amarillo 1993, writ denied). Each case in which equitable
estoppel is sought to be applied must rest upon its own facts. Vrazel
v. Skrabanek, 725 S.W.2d 709, 711 (Tex. 1987).[10]

 The gravity of a judicial means of acquiring an interest in land
of another solely by parol requires that equitable estoppel be
strictly applied; Allen v. Allen, 280 S.W.3d 366, 381 (Tex.App.--
Amarillo 2008, pet. denied) (citing Moore County v. Bergner, 526
S.W.2d 702, 706 (Tex.Civ.App.--Amarillo 1975, no writ)), and the
estoppel "should be certain, precise and clear." Id. (citing McAnally
v. Friends of WCC, Inc., 113 S.W.3d 875, 879 (Tex.App.--Dallas 2003,
no pet.)).

 Three elements are necessary to create an easement by estoppel:
(1) a representation of the easement communicated, either by words or
action, to the promisee; (2) the communication was believed; and (3)
the promisee detrimentally relied on the communication. Storms, 579
S.W.2d at 452. See Allen, 280 S.W.2d at 381; McKinzie, 869 S.W.2d at
595.[11] Further, once created, an easement by estoppel is binding on
the successors in title to the servient estate if reliance upon the
existing easement continues. Cleaver, 203 S.W.3d at 375; Holden v.
Weidenfeller, 929 S.W.2d 124, 131 (Tex.App.--San Antonio 1996, writ
denied).

 To establish the first element, Cockrell relies upon the legal
fiction of representation by silence. "The principle of estoppel by
silence arises where a person is under a duty to another to speak, but
refrains from doing so and thereby leads the other to act in reliance
on a mistaken understanding of the facts. The duty to speak does not
arise until the silent party is himself aware of the facts." Storms,
579 S.W.2d at 452.

C. The Pasture Road

 At trial, Cockrell asserted[12] the Ingrums obtained an easement
by estoppel over the pasture road due to Jones's silence and
acquiescence in the Ingrums’ use of the pasture road for approximately
fifty-five years.[13] And, after Jones transferred the property to
Martin and Cockrell came to own the Ingrum property, he asserted that
he succeeded to the Ingrum easement by estoppel and/or, in the
alternative, obtained an easement by estoppel over the pasture road
via Martin's silence and acquiescence in his subsequent use of the
pasture road.

 1. Ingrum and Jones

 Because Cockrell relies on the silence and acquiescence of the
Jones family in establishing an easement by estoppel in favor of his
predecessors in title, the Ingrums, we will first consider whether
Cockrell adduced any evidence that the Joneses had a duty to speak.
That is, did the Joneses owe a duty to advise the Ingrums that they
were permissive users of the pasture road? We will then consider
whether there is any evidence the Joneses made any representation of
an easement to the Ingrums that was believed and acted on by the
Ingrums to their detriment.

 Having reviewed the entire record, we find no evidence to
establish that the Joneses had any duty to make such a representation
to the Ingrums. Rather, all of the evidence adduced at trial
indicates that both the Ingrums and the Joneses understood that the
Ingrums’ use of the pasture road was by "friendly neighbourly
permission."

 Neither is there any evidence of extenuating circumstances that
would establish such a duty on behalf of the Joneses. The record is
devoid of any evidence establishing the Ingrums expended any money or
effort on the construction or upkeep of the pasture road[14] or,
relying on the pasture road, made any substantial or permanent
improvements to their property of which the Joneses were aware.[15]
Furthermore, distinguishing this case from other cases involving
landlocked tracts,[16] here there were alternative means of ingress
and egress to the Ingrum or Cockrell property without use of the
disputed pasture road.[17] In short, there is no evidence that the
Joneses were aware of any facts that would give rise to a duty to
advise the Ingrums that they were permissive users of the pasture road
in order to avoid the imposition of an easement by estoppel.

 Moreover, even if the Joneses had a duty to speak and their
silence or acquiescence constituted a representation, there is no
evidence the Ingrums "believed" such a representation. To the
contrary, Ingrum's testimony establishes he "believed" his family used
the pasture road with the "neighbourly permission" of the Joneses.
Neither is there any evidence that the Ingrums relied to their
detriment on any representation, silent or spoken, by the Joneses.[18]

 Cockrell contends that the McKinzie case stands for the
proposition that the doctrine of equitable estoppel requires no more
than mere silence when one who, by his silence, induces another to act
in a particular manner and then attempts to adopt an inconsistent
position that would cause loss or injury to the relying party.
Cockrell's reliance on the McKinzie case is, however, misplaced. In
McKinzie, there was some evidence that the relying party "believed"
the landowner's silence was a representation of an easement, i.e.,
McKinzie filed an affidavit in the deed records of Kent County
claiming an easement over the roads on Wallace's property for the
purpose of ingress and egress to his landlocked property. 869 S.W.2d
at 595. In addition, McKinzie testified that, after a conversation
with Wallace, he believed he had an easement and in reliance thereon
maintained the access road and made improvements to his property. Id.
 Here, all the evidence is to the contrary, i.e., the Ingrums believed
their use was permissive, did not construct or maintain the disputed
pasture road and Cockrell adduced no evidence that the Ingrums relied
on use of the road to make any substantial or permanent improvements
to their property.

 Accordingly, considering the evidence in the light most
favorable to the jury's finding of an easement by estoppel while
indulging every reasonable inference to support it, we find the
evidence offered in support of an easement by estoppel by virtue of
the relationship between the Joneses and the Ingrums, does not exceed
a scintilla.

 2. Cockrell and Martin

 Cockrell's evidence in support of an easement by estoppel due to
any relationship between Cockrell and Martin is even more tenuous.
Martin purchased the Jones property in 2000. From that point,
Cockrell contends two fact scenarios gave rise to an easement by
estoppel. One, from 2001 to 2006, Martin entered into a series of
grazing leases with Lee Cockrell as Alice Ingrum Gray's guardian,
where he used the disputed pasture road to access the Ingrum property
and, two, from 2002 to 2006, Martin gave Gray County permission to
haul caliche from the Cockrell property over the pasture road to
County Road 24.

 That Martin may have used a pasture road on his own property to
care for his cattle grazing on the Ingrum property pursuant to a lease
is of no moment. "[O]ne cannot be said to have an easement in lands,
the fee simple to which is in himself." Othen v. Rosier, 148 Tex.
485, 226 S.W.2d 622, 625 (1950).[19] A landlord/tenant relationship
does not create a vendor/vendee relationship. See Allison, 836 S.W.2d
at 188 ("[s]ince there was no prior common ownership of the tracts, no
vendor/vendee relationship existed between the parties").
Furthermore, with respect to Gray County's use of the pasture road,
Martin had a "gentlemen's agreement" with Gray County Commissioner
Wheeley permitting the county to use the pasture road for a specific
purpose. Martin's agreement with Wheeley could not have created an
easement in favor of Cockrell. Therefore, neither of these two
scenarios gave rise to an easement by estoppel.

 In 2006, Cockrell received the combination to the lock between
the Ingrum and Martin properties for the purpose of checking on his
windmills. However, three days later, when Marshal Hopkins began
parking his heavy equipment on Martin's property in anticipation of
using the pasture road to haul caliche from the Ingrum property,
Martin denied Hopkins use of the pasture road and days later installed
a combination lock on the gate where County Road 24 met the pasture
road at the entrance of his property. Further, in June or July 2007,
after Cockrell obtained title to the Ingrum property, Martin refused
to give Cockrell the combination to the lock.

 Under the circumstances, Martin had no duty to speak and made no
representation to Cockrell. Giving Cockrell the combination to the
locked gate between the Ingrum and Martin properties was more in the
nature of giving a license in real estate[20] rather than creating an
easement. See Machala v. Weems, 56 S.W.3d 748, 760 (Tex.App.--
Texarkana 2001, no pet.). Martin could have changed combinations at
any time. In addition, there is no evidence Martin had made any
representation to Cockrell that would have required him to give
Cockrell a new combination to the gate. Rather, the evidence shows
that, only days later, Martin denied entry to Hopkins when he
requested use of the pasture road to haul caliche from the pit located
on the Cockrell's property and thereafter refused to give Cockrell the
combination to the locked gate at the entrance of the pasture road off
County Road 24.

 In addition, like the relationship between the Joneses and the
Ingrums, there was no evidence of common ownership of the tracts, no
vendor/vendee relationship and no probative evidence of fraud, actual
or constructive, perpetrated upon Cockrell. Neither was there any
evidence of misrepresentations or overreaching conduct by Martin.

 Accordingly, we sustain Martin’s first issue. Because our
finding pretermits issues two through five, we will next consider
issues six and seven.

II. Nominal Damages

 The jury found that Cockrell trespassed on Martin's property
when Hopkins drove his equipment outside the pasture road, proximately
causing damages to Martin's property. The jury further found the use
of a passageway alongside the pasture road was not privileged.
Nonetheless, in response to the question as to what sum of money, if
paid now in cash, would fairly and reasonably compensate Martin for
his damages, the jury answered: "$ - 0 - ." In accordance with the
jury's verdict, the trial judge ordered that Martin "take nothing" by
virtue of his counterclaim against Cockrell.

 Martin contends that because the jury found a trespass, and no
privilege, he is entitled to "nominal damages" as a matter of law.
Martin relies solely upon the case of General Mills Restaurants, Inc.
v. Texas Wings, Inc., 12 S.W.3d 827, 833 (Tex.App.--Dallas 2000, no
pet.), as support for his proposition of law. His reliance upon this
authority is misplaced because General Mills arises in the procedural
context of a no-evidence motion for summary judgment. There, the
appellate court found that the trial court erred when it granted the
appellee's no-evidence summary judgment based upon an absence of
evidence of damages on appellee's claim.

 Here, Martin's claim is essentially a contention that the jury's
finding is not supported by the evidence, or is against the great
weight and preponderance of the evidence. A review of the record,
however, reveals that it is devoid of any evidence establishing that
Martin expended any money or effort repairing any damages caused by
Cockrell's vehicles or equipment being driven outside the pasture
road. Although there was testimony concerning the efforts necessary
to restore the pasture road to its original condition after Gray
County ceased using the road, no similar evidence was ever presented
which would have allowed a jury to attach a monetary figure to any
efforts to restore the adjacent passageway after Cockrell's usage.
The jury was the sole judge of the evidence and it alone was entitled
to make credibility determinations as to the weight and sufficiency of
the evidence. Based upon the record before us, we cannot say that the
jury's decision to deny recovery of damages for this trespass was so
against the great weight and preponderance of the evidence as to be
clearly wrong or manifestly unjust. Martin simply failed to carry his
burden of proof. Accordingly, his sixth issue is overruled.

III. Attorney's Fees

 In his Original Verified Petition filed August 17, 2007,
Cockrell asserted he was entitled to an easement by prescription over
the pasture road because of past use that was "open, notorious,
continuous, exclusive and adverse." On January 31, 2008, Cockrell
amended his petition, in part, eliminating his assertion of an
easement by prescription. Martin asserts that he is entitled to
reasonable and necessary attorney's fees in defending against
Cockrell's claim of easement by prescription pursuant to Section
16.034 of the Texas Civil Practice and Remedies Code. See Tex. Civ.
Prac. & Rem. Code Ann. § 16.034 (Vernon 2002).[21]

 A. Standard of Review

 Because the award of attorney's fees rests in the sound
discretion of the trial court, the judgment will not be reversed on
appeal without a clear showing of abuse of discretion. Ridge Oil Co.,
Inc. v. Guinn Invs., Inc., 148 S.W.3d 143, 163 (Tex. 2004). See Smith
v. McCarthy, 195 S.W.3d 301, 303 (Tex.App.--Fort Worth 2006, pet.
denied) (section 16.034 provides for a discretionary award of
attorney's fees). A trial court abuses its discretion when it acts
arbitrarily and unreasonably, or without reference to guiding rules
and principles. City of Amarillo v. Glick, 991 S.W.2d 14, 17
(Tex.App.--Amarillo 1997, no pet.) (citing Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476
U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986)).

 B. Section 16.034

 Section 16.034 states, in pertinent part, as follows:
 In a suit for the possession of real property between a person
 claiming under record title to the property and one claiming by
 adverse possession, if the prevailing party recovers possession
 of the property from a person unlawfully in actual possession,
 the court may award costs and reasonable attorney's fees to the
 prevailing party.

Section 16.034(a).[22]

 The pleadings make clear that at no point did this case involve
a claim by Cockrell for adverse possession and there was no
adjudication that either party was unlawfully in actual possession of
the other's property. While Martin seeks to equate Cockrell's claim
of prescriptive easement to an adverse possession claim there is a
fundamental difference between the two, i.e., an adverse possession
claim asserts a right to ownership of land while a claim of
prescriptive easement asserts a privilege of using the land. Although
the elements of the two claims may be quite similar; Othen, 226 S.W.2d
at 492, their practical effect is significantly different. Because
Cockrell made no claim of adverse possession, section 16.034 is
inapplicable and the trial court did not abuse its discretion by
denying Martin's request for attorney's fees.[23] Martin's seventh
issue is overruled.

 CONCLUSION

 We reverse that portion of the trial court's judgment awarding a
permanent equitable easement and render judgment that Cockrell take
nothing as to his claims against Martin; we affirm that portion of the
trial court's judgment decreeing that Martin take nothing as to his
counterclaim against Cockrell and, in light thereof, we also reverse
the trial court’s assessment of costs against Martin and render
judgment against Cockrell for all costs of court.

 Patrick A. Pirtle
 Justice

-----------------------
[1]Hereinafter, the "Jones Property" will be referred to as the
"Martin Property."

[2]Lee Cockrell, as Alice Ingrum Gray's guardian, had entered into an
agreement to sell caliche to Gray County for fifty cents a yard.

[3]Otherwise, rain would make the pasture road nearly impassable even
for a pickup truck.

[4]On July 3, 2007, the Ingrum property was deeded to Cockrell by
Jerry G. Davis, Independent Administrator of the Estate of Alice B.
Ingrum Gray, Deceased. Cockrell testified that, when negotiating a
settlement of his mother's estate with his brother, he took into
account the county's contract to haul caliche which paid ten thousand
dollars a year and use of the pasture road over the Martin property.
Hereinafter, the "Ingrum Property" will be referred to as the
"Cockrell Property."

[5]Cockrell subsequently entered into grazing leases with a relative
who paid more for the leases than Martin was paying.

[6]Mike Voss of Mike's Water Well Service testified he did his first
job for Cockrell in early spring 2007. He testified he repaired three
of Cockrell's windmills, all in bad shape. He further testified the
pasture road facilitates work on the windmills and was "the only
entrance that we had with our equipment to get in there." Susan
Martin testified there were other roads on the Ingrum property from
where access could be had to the windmills although it might be
necessary to blade them to accommodate windmill servicing trucks.

[7]Less than a scintilla of evidence exists when the evidence is so
weak as to do no more than create a mere surmise or suspicion of fact.
 King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003), cert.
denied, 541 U.S. 1030, 124 S.Ct. 2097, 158 L.Ed.2d 711 (2004).

[8]Section 26.01 of the Texas Business and Commerce Code provides that
a promise or agreement for the sale of real estate is not enforceable
unless the promise or agreement, or a memorandum of it, is in writing
and signed by the person charged with the promise or agreement or by
someone lawfully authorized to sign for him. Tex. Bus. & Com. Code
Ann. § 26.01 (Vernon 2009). See Tex. Prop. Code Ann. § 5.021 (Vernon
2004).

[9]An easement confers on one person the right to use the land of
another for a specific purpose; Hubert v. Davis, 170 S.W.3d 706, 710
(Tex.App.--Tyler 2005, no pet.), but does not convey title to the
property. South Plains Switching, Ltd., Co. v. BNSF Railway Co., 255
S.W.3d 690, 707 (Tex.App.--Amarillo 2008, pet. denied). See Stephen
F. Austin State University v. Flynn, 228 S.W.3d 653, 658 (Tex. 2006).
It is a burden on one estate, the servient estate, for the benefit of
another, the dominant estate. Miller v. Babb, 263 S.W.253, 254 (Tex.
Comm'n App. 1924, judgm't adopted).

[10]Application of the doctrine has been "rare and nebulous" in
circumstances other than the three circumstances described by the
Texas Supreme Court in Drye v. Eagle Rock Ranch, Inc., 364 S.W.2d 196,
209-10 (Tex. 1958): (1) a dedication of a street, alley or square;
(2) an owner selling land with reference to a map or plat; and (3) a
seller of land who allows its purchaser to expend money on an alleged
"servient" estate. Id. See Scott v. Cannon, 959 S.W.2d 712, 720
(Tex.App.--Austin 1998, pet. denied). None of these circumstances
exist here.

[11]These elements apply at the time the communication creating the
alleged easement is made. Vinson v. Brown, 80 S.W.3d 221, 229
(Tex.App.--Austin 2002, no pet.) (citing Lakeside Launches, Inc. v.
Austin Yacht Club, Inc., 750 S.W.2d 868, 872 (Tex.App.--Austin 1988,
writ denied)).

[12]Cockrell had the burden at trial to prove an easement by
implication. See Miller v. Elliot, 94 S.W.3d 38, 43 (Tex.App.--Tyler
2002, pet. denied).

[13]Cockrell did not assert at trial there was any prior common
ownership of the Ingrum and Jones properties or that any vendor/vendee
relationship ever existed between the owners of the properties.
Neither is there any evidence of record that any fraud, actual or
constructive, was perpetrated by any owner of either property.

[14]"The doctrine of estoppel in pais has been applied when the seller
allows the purchaser to expend money on the 'servient' tract, as for
example a drainage ditch across the grantor's land, or a house or
other structure which encroaches on the land of the 'servient'
estate'; Drye, 364 S.W.2d at 210. See Storms, 579 S.W.2d at 453;
Murphy v. Long, 170 S.W.3d 621, 628 (Tex.App.--El Paso 2005, pet.
denied).

[15]Where there is little or no evidence that the owner of the
"servient" estate was aware that the alleged owners of a "dominant"
estate made any substantial improvements to their property, there is
no duty to speak. Wilson v. McGuffin, 749 S.W.2d 606, 611 (Tex.App.--
Corpus Christi 1988, writ denied). Here, there was no testimony by
Jones or Ingrum that Jones was aware of any improvements made by the
Ingrums on their property.

[16]See, e.g., Cundiff, 203 S.W.3d at 376 (nearly one hundred years of
use and landlocked claimant built and maintained the road and made
improvements on his property); Weidenfeller, 929 S.W.2d 124, 131
(Tex.App.--San Antonio 1996, writ denied) (more than fifty years and
landlocked claimant contributed to road maintenance, built a large
house on the property and presented evidence of significant amounts of
labor and money being expended to improve claimant's property); Russ
v. Womack, No. 13-08-0002-CV, 2008 Tex. App. LEXIS 8361, *12 (Tex.App.-
-Corpus Christi Nov. 6 2008, no pet.) (not designated for publication)
(twelve years during which landlocked families built homes and made
improvements without objection); Thompson v. Houk, No. 12-04-00315-CV,
2005 Tex. App. LEXIS 6875, at *8 (Tex.App.—Tyler Aug. 24, 2005, no
pet.) (not designated for publication) (easement by estoppel found
where, for at least twenty years, landlocked claimants used access,
moved in a mobile home and established permanent residence); Russell
v. Rawls, No. 08-00-0546-CV, 2003 Tex. App. LEXIS 2369, at *11-12
(Tex.App.--El Paso March 20, 2003, no pet.) (not designated for
publication) (finding permissive, acquiescent conduct constituted
representation where, for more than ten years, owner of landlocked
track traveled road to care for self and landowner of the servient
estate who was in failing health).

[17]"Where the landowners had another method of access to their
properties but used a second roadway as a matter of convenience to
reach their property, there can be no implied easement over the second
roadway because there is no necessity." Duff v. Mathews, 158 Tex.
333, 311 S.W.2d 637, 643 (1958). See Adams v. Norsworthy Ranch, Ltd.,
975 S.W.2d 424, 429 (Tex.App.--Austin 1998, no pet.). Moreover,
"impassibility of a [second] road gives a party no right to an
easement." Duff, 311 S.W.2d at 643. See Roberts v. Allison, 836
S.W.2d 185, 188 (Tex.App.--Tyler 1992, writ denied) (impassability of
alternative route not notice of an easement claim); Sentell v.
Williamson County, Texas, 801 S.W.2d 220, 223 (Tex.App.--Austin 1990,
no pet.) (no matter that alternate route is "too steep or too narrow,
or that other and like difficulties exist"). "When one has access to
a part of his tract of land by way of travel over his own property,
this, as a matter of law, is a better and more direct route than one
which burdens an adjacent landowner." Id.

[18]While the Ingrums erected some cattle pens and a couple of
windmills on their property, there is no evidence they were built in
reliance on use of the pasture road. The improvements were consistent
with the Ingrums overall use of their property as a cattle ranch.
Given there were alternative means of access to the Ingrum property
and the value of the improvements would not be lost or rendered
valueless if the pasture road could not be used, evidence of the
improvements represents less than a scintilla in support of
detrimental reliance. In addition, the evidence at trial indicated
the cattle pens had largely rotted and the windmills were in disrepair
when Cockrell took ownership of the Ingrum property.

[19]Moreover, "[t]he use of a way over the land of another when the
owner is also using the same is not such adverse possession as will
serve as notice of a claim of right, for the reason that the same is
not inconsistent with a license from the owner." Othen, 226 S.W.2d at
627.

[20]A license in real estate merely confers a privilege to do some act
or acts upon the land without conveying any interest in or title to
the land itself; Samuelson v. Alvarado, 847 S.W.2d 319, 323 (Tex.App.-
-El Paso 1993, no pet.), and is revocable at will. Drye, 364 S.W.2d
at 203.

[21]Although this statute was subsequently amended in 2009; Act of
June 29, 2009, 81st Leg., R.S., ch. 901, § 1, 2009 Tex. Gen. Laws,
2431, this suit is governed by the law in effect immediately before
the effective date of the amendment, September 1, 2009. Id. at § 2.
Further, for convenience, we will cite to section 16.034 of the Texas
Civil Practice and Remedies Code throughout the remainder of this
opinion simply as "section 16.034" or § 16.034."

[22]In general, attorney's fees are not recoverable unless provided
for by statute or between the parties. New Amsterdam Casualty Company
v. Texas Industries, Inc., 414 S.W.2d 914, 915 (Tex. 1967). Such
statutory provisions for the recovery of attorney fees must be
strictly construed because they are penal in nature and are in
derogation of the common law. Id.

[23]See Spruell v. Goelzer, No. 13-98-070-CV, 1999 Tex. App. LEXIS
6493, at *3 (Tex.App.--Corpus Christi Aug. 26, 1999, no pet.) (not
designated for publication).